[No. 1624, February 23, 1914.]

STATE OF NEW MEXICO, ex rel. JACOBO CHAVEZ, Appellee, v. WILLIAM G. SARGENT, State Auditor, Appellant.

SYLLABUS (BY THE COURT)

1. The office of Superintendent of Insurance, created by chapter 5, Laws of 1905, which was amended by chapter 48, Laws 1909, was not abolished by section 6 of article XI of the Constitution. The latter is not self-executing except as to those powers specifically conferred upon the Corporation Commission therein. It requires legislation to carry the section into effect in regard to some of the powers therein conferred on the Corporation Commission, among which are many of the powers now exercised by the Superintendent of Insurance. The Superintendent of Insurance was continued in office by section 9 of article XXII of the Constitution, until superseded by the Corporation Commission, and he has not been fully so superseded, by reason of the lack of legislation to carry the constitutional provision into effect. He

may still exercise such functions of his office as were not specifically transferred to the Corporation Commission.

P. 634

2.   State ex rel. Fornoff v. Sargent, 136 Pac. 602, and State ex rel. Delgado v. Sargent, 134 Pac. 218, approved.   Sections 4 and 11 of chapter 127, Laws 1909, and chapter 40, Laws 1909, interpreted and construed, and held to repeal by necessary implication, section 12, of chapter 5, Laws 1905, in so far as the same authorizes the payment of the salary of the Superintendent of Insurance out of the Insurance Fund upon the warrant of the Superintendent of Insurance approved by the State Auditor.   The Superintendent of Insurance, after the act of 1909, was to be paid his salary out of the general salary fund of the Territory, and was so paid until December 1, 1912, when the appropriation therefor ceased.

P. 639

Appeal from the District Court of Santa Fe County; Edmund C. Abbott, District Judge; reversed and remanded with instructions to dismiss the writ of mandamus.

IRA L. GRIMSHAW, Assistant Attorney General, Santa Fe, N. M., for appellant.

The legislature impliedly repealed the law providing for the payment of the salary of appellee and no appropriation in law exists for the payment thereof.   Chap. 5, Laws 1905; sec. 4, chap. 127, Laws 1909; sec. 18, ch. 83, Laws 1912; sec. 30, art. IV, Constitution of N. M.

Interpretation of the laws.   Sutherland on Stat. Const., p. 422; Id., p. 177.

All receipts of the State Corporation Commission ,including all receipts of the Insurance department of the State, shall hereafter be covered into the State Salary fund.   Laws 1912, p. 210.

RENEHAN & WRIGHT, Santa Fe, N. M., for appellee.

State ex rel. v. Sargent, 18 N. M. 627.

There is but one question to be determined by the Court. State, ex rel. Delgado, v. Sargent, 134 Pac. 218; State, ex rel. Fornoff, v. Sargent, 18 N. M. 131.

Statutory provisions involved in the determination of this case. Secs. 2 and 12, Laws 1905; sec. 18, ch. 83, Laws 1912, and sec. 11, ch. 83, Laws 1913, are void, for the reason that they come within the constitutional prohibition contained in sec. 16, art. IV, Const. of N. M.; State, ex rel. Delgado, v. Sargent, 134 Pac. 218.

The Insurance fund is therefore intact. Sec. 12, ch. 5, Laws 1905.

The transfer of all the moneys in the Insurance fund, pursuant to sec. 21, ch. 83, Laws 1912, was also illegal and void. Sec. 12, ch. 5, Laws 1905; State, ex rel. Delgado, v. Sargent, 134 Pac. 218.

Sole question for determination is the effect of sec. 4, of chap. 127, Laws 1909; sec. 2, ch. 5, Laws 1905; Id., sec. 12

Repeal by implication is not favored by the courts and the presumption is always against the intention to repeal, where express terms are not used. 36 Cyc. 1071-2, and cases cited.

To justify the presumption of an intention to repeal one statute by another, either the two statutes must be irreconcilable, or the intent to effect a repeal must be otherwise clearly expressed. 36 Cyc. 1072, and cases cited; Id., p. 1074, et seq., and cases cited.

Beneral words should never be construed as to divest a right clearly granted, if the words without a violation of the provisions of the statute, are susceptible of another construction consistent with the right. McAfee v. Southern R. R. Co. 36 Miss. 669; U. S. v. 25 Cases of Cloths, 28 Fed. Cases, 16,563.

Repeal of a repealing statute. Ch. 21, Laws 1912; Milne & Co. v. Huber, et al., 3 McLean, 212, 17 Fed. Cas. 9617; State, ex rel. Fornoff, v. Sargent, 18 N. M. —.

A distinction must be drawn between an express and an implied repeal. U. S. v. 25 Cases of Cloths, 28 Fed. Cases, 16,563; Crabbe, 356.

*Memorandum Brief for Appellee.*

Is the office of Superintendent of Insurance abolished? Const. N. M., art. XI, sec. 6; Id., art. XXII, sec. 4; Laws 1905, ch. 5; Laws 1909, ch. 48; Id., sec. 6; Mitchell, et al., v. National Surety Co., 206 Fed. 807.

## OPINION OF THE COURT.

PARKER, J.—This is a proceeding by mandamus by the relator, as Superintendent of Insurance, against the respondent, as State Auditor, to compel the approval of a warrant drawn by him on the Insurance fund for the sum of $1400 in favor of relator, as Superintendent of Insurance for salary from the 1st day of December, 1912, to the 1st day of July, 1913.

The respondent defended upon the ground that there was no appropriation of the legislature for any salary of the Superintendent of Insurance after December 1, 1912, and that, therefore, he had no authority to pay the salary. The District Court found against the respondent, and he appeals to this Court.

The question is one of statutory construction. The insurance department was organized by chapter 5 of the laws of 1905. Section 4 of that act is as follows:

"Such superintendent of insurance shall receive a salary of two thousand four hundred dollars per annum, which shall be paid out of the insurance fund hereinafter provided for."

Section 12 of that act creates an Insurance fund out of which all the salaries and expenses of the department are to be paid, upon the warrant of the Superintendent of Insurance, approved by the State Auditor. This act was amended by chapter 48 of the laws of 1909. Section 11 of chapter 5 of the laws of 1905, as amended by section 2 of chapter 48 of the laws of 1909, requires,

"All insurance companies, partnerships or associations engaged in the transaction of the business of insurance in this Territory shall annually on or before the 1st day of February in each year, pay to the Superintendent of Insurance two per centum on the gross amount of premiums received, less returned premiums within this Territory,

during the year ending the previous 31st day of December."

Section 16 of the Act of 1905, as amended by section 4 of the Act of 1909, provides that,

"No insurance company organized by any other author- ity than the Territory of New Mexico shall, directly or in- directly issue policies, take risks or transact business in the Territory until it shall have first appointed, in writ- ing, the Superintendent of Insurance to be the true and lawful attorney of such company in and for this Territory, upon whom all lawful processes in any action or proceed- ings against the company may be served with the same effect as if the company existed in this Territory. Said power of attorney shall stipulate and agree upon the part of the company, that any lawful process against the com- pany which (when) served on said attorney shall be of legal force and validity as if served upon the company and that the authority shall continue in force so long as any liability remains outstanding against the company in this Territory. A certificate of such appointment, duly certi- fied and authenticated, shall be filed in the office of the Superintendent of Insurance, and copy certified by him shall be deemed sufficient evidence; service upon such at- torney shall be deemed sufficient service upon the prin- cipal."

Section 6 of the Act of 1909, provides,

"That in this act, unless the context otherwise requires, 'Company' or 'Insurance Company' shall include all cor- porations, associations, partnerships or individuals engaged as principals in the insurance business, excepting frater- nal and benevolent orders and societies."

Section 25 of the Act of 1905, as amended by section 41, laws 1909, requires all fraternal, benevolent or relig- ious societies or associations, whether operating under the lodge system or otherwise, to designate the Superintend- ent of Insurance as its attorney upon whom processes may be served, and requires all such societies to make annual reports to the Superintendent of Insurance, and to pay an annual fee of $5.00, but otherwise they are expressly ex- empted from all the provisions of the two acts.

The two acts contain quite a comprehensive system of inspection and regulation, both of foreign and domestic insurance companies, with power in the Superintendent of Insurance to revoke the authority of any company to do business in the State.

This was the state of the law at the adoption of the Constitution. By that instrument it was provided in section 6, of article XI, as follows:

"Subject to the provisions of this Constitution, and of such requirements, rules and regulations as may be prescribed by law, the State Corporation Commission shall be the department through which shall be issued all char ters for domestic corporations and amendments or exten sions thereof, and all licenses to foreign corporations to do business in this State; and through which shall be carried out all the provisions of this Constitution relating to corporations and the laws made in pursuance thereof. The commission shall prescribe the form of all reports which may be required of corporations by this Constitu tion or by law, and shall collect, receive and preserve such reports, and annually tabulate and publish them. All fees required by law to be paid for the filing of articles of incorporation, reports and other documents, shall be collected by the commission and paid into the State treasury. All charters, papers and documents relating to corporations on file in the office of the Secretary of the Territory, the Commissioner of Insurance and all other territorial offices, shall be transferred to the office of the commission."

It appears from this section of the Constitution that an an entire transfer of all of the powers of the supervision and control of insurance corporations from the Superintendent of Insurance to the Corporation Commission was contemplated. The Superintendent of Insurance is required to transfer to the Corporation Commission all charters, papers and documents relating to corporations on file in his office. The Corporation Commission is declared to be the agency through which all of the provisions of the Constitution, or laws made in pursuance thereof, shall be carried out.

Section 4, article XXII, of the Constitution, brought

State ex rel. v. Sargent, 18 N. M. 627.

forward such laws of the Territory as were not inconsistent with the Constitution. There is nothing inconsistent between insurance laws of the Territory and the State Constitution in regard to the regulation of insurance companies, except that the powers of regulation shall be exercised by the Corporation Commission instead of the Superintendent of Insurance. But this provision of the Constitution is not self-executing. It announces a general principle or rule which requires legislation to make it effective. This is at once apparent. Had the section provided that the chairman of the Corporation Commission or any member thereof should have and exercise until otherwise provided by law, all the powers exercised by the Superintendent of Insurance under the Territorial laws, and that each insurance company should appoint said chairman or member its attorney in fact to receive service of process as now required in regard to the Superintendent of Insurance, then the section would be self-executing and no legislation would be required to carry it into effect. Then the Corporation Commission might investigate insurance companies and might cancel permits or licenses to do business, and might receive service of process for insurance companies, and otherwise do and perform all of the functions of the office of Superintendent of Insurance, and insurance companies would be compelled to appoint said Corporation Commission as attorney in fact to receive such service of process, and pay the two per centum to the commission. But such is not the case, and no legislation has been had in aid of the constitutional provision. Chapter 78, laws 1912, the only act of the State legislature in this regard, refers to the procedure before the Corporation Commission in cases involving transportation and transmission companies, and no mention is made of insurance corporations.

Section 9, of article 22 of the Constitution, provides as follows:

"All courts existing, and all persons holding offices or appointments under authority of said Territory, at the time of the admission of the State, shall continue to hold and exercise their respective jurisdictions, functions; of-

fices and appointments until superseded by the courts, officers, or authorities provided for by this Constitution."

We have then the anomalous situation of the Constitution providing a general rule for the regulation of the insurance corporations by the Corporation Commission, but no legislation to carry it into effect, and we have a terri- torial officer charged by the laws with the regulation of insurance corporations and unincorporated associations, and who was continued in office by the Constitution until "su-- perseded by the * * * authorities provided for by this Constitution."

Under such circumstances, evidently the office of Super- intendent of Insurance has not been abolished. The Cor- poration Commission has not "superseded" the Superin- tendent of Insurance, because it has not been clothed with the necessary powers by legislation to carry into effect the constitutional provision. Certain powers are specifically conferred by the Constitution, section 6, article 11. 1 supra, and such the Corporation Commission may ex- ercise without legislation. But the larger portion of the powers over insurance companies and associations still remain with the Superintendent of Insurance.

The question as to whether the office of Superintendent. of Insurance has been abolished and whether he might still receive service of process for insurance companies, was considered by our own Federal Court, and Judge Pope reached the same conclusion. Mitchell v. National Surety Co., 206 Fed. 807.

It would seem that such a state of affairs could hardly have arisen anywhere, but it has in Kansas, Michigan, and Florida.

In Kansas the territorial legislature was in session when the State was admitted on January 29, 1861. This legis- lature passed an act on January 31, 1861, which was the subject of controversy in State v. Meadows, 1 Kan. 91. The language of the schedule of the Kansas Constitution was:

"The governor, secretary, and judges, and all other offi- cers, both civil and military, under the territorial govern- ment, shall continue in the exercise of the duties of their

respective departments until the said officers are superseded under the authority of this Constitution."

The Court said: "It was, without doubt, competent for the Constitution, by its terms, to provide against an inter-regnum, by adopting the territorial officers and machinery, and making the existing functionaries of the Territory the officers of the State for the time being, to secure the means of preserving by legal steps the enforcement of the laws. That they designed so to do, and to fill every department of the State government in this way until superseded by the action of the State government, provided for elsewhere in the Constitution, would seem to be apparent from the language above quoted. The expression, 'all other officers,' is very broad and comprehensive. It could hardly have been made more so. Members of the legislature, not only in the common use and acceptation, but in the technical and legal sense of the term, are officers of the government.

"The legislature of the State could, by no process of reasoning, be considered as superseding the territorial legislature before the issuing of the proclamation of the governor convening them."

The Florida case was one where a territorial con·t exercised jurisdiction of a Federal cause after the admission of the State into the Union. The Supreme Court of the United States, in Benner v. Porter, 9 How. 235, held that all Federal jurisdiction in territorial courts ceased on admission of the State, but in comment on the transition from the territorial to State government, said:

"It will be seen, therefore, under this ordinance of the Constitution, that, on the admission of Florida as a State into the Union, the organization of the government under the new Constitution became complete, as every department became filled at once by the adoption of the territorial functionaries for the time being. The convention being the fountain of all political power, from which flowed that which was embodied in the organic law, were, of course, competent to prescribe the laws and appoint the officers under the Constitution, by means whereof the government could be put into immediate operation, and thus

avoid and interregnum that must have intervened if left to an organization according to the provisions of that instrument. This was accomplished by a few lines adopting the machinery of the territorial government for the time being, and until superseded by the agency and authority of the Constitution itself."

In Michigan the territorial government was organized in 1805, but under the Ordinance of 1787 for the government of the Northwest Territory, Michigan had a right to form a State government at any time whenever the Territory should contain sixty thousand free white male inhabitants. This was done, and, prior to March 26, 1836, a full State government was in operation, although Congress did not formally admit the State into the Union until January 26, 1837. In the meantime a corporation was formed under the laws of the new State, and received the conveyance from the board of governors and judges, who, besides performing the ordinary functions of government of the Territory, were granted certain powers of conveyance of government land in and about Detroit, of which the land in controversy was a part. The Court held that the State government was lawfully established and its acts were valid before the State was formally admitted by Congress, and further said:

"Were the powers and duties of the Governor and Judges such as we have seen them to be, under these various acts of Congress referred to, superseded by the organization of the State government? And were these offices absolutely and for all purposes, vacated and determined by that event?

"If determined at what time? The change, from a territorial to a State government, was not, and from necessity could not be, instantaneous. Indeed, our Constitution itself contemplated that there could be no such sudden transition, for the fifth section of the Schedule (of just as high authority as the Constitution) declares, that "all officers, civil and military, now holding their offices and appointments in this Territory, under the authority of the United States, or under the authority of this Territory, shall continue to hold and exercise their respective

offices and appointments, until superseded under this Constitution.' The act of the State legislature providing for the appointment of Judges of the Supreme Court of the State, did not take effect, nor did such Judges enter upon the term of their offices, until after July 4, 1836. The Judges of the Territory, therefore, continued to hold their offices, and to discharge the duties thereof, until after that time." Scott v. Detroit Young Men's Society, 1 Doug. (Mich.) 119, 143.

It seems plain, therefore, that the Superintendent of Insurance, a territorial officer, still remains in office and may exercise all the functions of his office, except such as are specifically transferred to the Corporation Commission by the Constitution.

As before seen, the Act of 1905 created the office of Superintendent of Insurance, and provided a permanent salary for him. This amounted to a continuing appropriation out of the Insurance fund, and required no subsequent appropriations by the legislature. State, ex rel Fornoff, v. Sargent, 136 Pac. 602.

The legislature of 1907 made no appropriation for the salary of Superintendent. The legislature of 1909, however, made a specific appropriation of $2400 for salary of the Superintendent, $1400 for clerk and $600 for contingent expenses, per year, for the 61st and 62nd fiscal years, and extended appropriations, together with all others, from year to year until another appropriation bill should be passed. Chap. 127, secs. 4 and 11, Laws 1909.

The State legislature of 1912 made no appropriation for the officers of the Insurance department, and, on the other hand, diverted all of the surplus moneys in the Insurance fund and attempted to provide that all moneys received in the future by the Insurance department should be covered into the State Salary fund. Chapter 83, sections 18 and 21, Laws 1912.

These two sections were considered in State, ex rel. Delgado, v. Sargent, 134 Pac. 218, in which we held that the last paragraph of section 18 was unconstitutional because general legislation, and that section 21 diverted only such portion of the Insurance fund as was not required to

meet existing appropriations. While we held the last paragraph of section 18 unconstitutional because it antagonized section 16 of art. IV of the Constitution, the fact nevertheless remains that by the passage of the paragraph, there was clearly manifested a legislative intent to discontinue and abolish the Insurance fund, and to cover all funds received in the future into the State Salary fund. The legislature failed, not by reason of want of intent, but by reason of constitutional restriction, to accomplish its purpose.

The legislature of 1913, by section 9 of chapter 83 of that session, appropriated out of the general funds of the State, and up to March 15, 1913, for salary of Superintendent $700, and for salary of clerk, $406 and for contingent expenses, $175. This clearly indicates legislative intent to pay the Superintendent by appropriation, and not out of the Insurance fund, and to stop all pay after March 15, 1913. It is true this item was vetoed by the Governor, but the fact remains that the legislature attempted to accomplish this result.

We shall not attempt to define what effect in interpretation or construction of prior statutes the passage of an unconstitutional provision or a provision which may be vetoed by the executive may have. By reason of the provisions of another act, of the session of 1909, it becomes unnecessary to do so. We deem the latter act controlling.

It will be remembered that under the Act of 1905, sec. 12, all expenses of the Insurance department, including salaries, were to be paid out of the Insurance funds, "on warrants drawn on such fund by the Superintendent of Insurance and approved by the Territorial Auditor." In direct conflict with this provision, chapter 40, laws of 1909, provides that the Territorial Treasurer shall pay out no funds which shall come into his hands "except on warrant of the Territorial Auditor." The warrant of the Superintendent of Insurance on the Insurance fund, approved by the Auditor, is not the warrant of the Auditor. This provision alone is decisive of this case adverse to the relator. He is seeking to compel the approval of his warrant on the Insurance fund by the Auditor, which, as is seen, is

now prohibited by law.  Chapter 40, laws of 1909, was not called to our attention on argument, nor was it relied upon by respondent in his answer.  He relied, as before seen, upon the fact that the salary of the Superintendent of Insurance was now payable out of specific appropriations, and there being none, he was not authorized to approve warrants for the same.  But even so, the legislative intent to depart permanently from the policy of paying the Superintendent of Insurance on his own warrants, out of the Insurance fund is made certain by the chapter.

In this connection it is to be noted that, since the passage of the Act of 1909, the Superintendent of Insurance has never drawn his salary from the Insurance fund.  He continued to draw his salary under the general appropriation bill of 1909 until December 1, 1912.  The Superintendent of Insurance and the Territorial Auditor immediately interpreted the Act of 1909 as a departure from the theory of the Act of 1905, and the Auditor issued his warrants on the Salary fund, not the Insurance fund, and the Superintendent of Insurance accepted the same, and discontinued drawing warrants on the Insurance fund.

It is to be regretted that this anomalous condition exists.  We have here a faithful public servant, charged with the duty of performance of the major portion of the powers in regard to the supervision and regulation of insurance companies, and there is no other officer properly clothed with power to perform the same.  And yet there is no provision of law whereby he can be paid.  This is due, no doubt, to mistake on the part of the legislature in assuming that the constitutional provision is fully self-executing, and that the Corporation Commission has succeeded to all the powers of the Superintendent of Insurance.  But he is in no worse position than are all of the County officers of the State, owing to the differences of opinion between the legislative and executive departments of the State.  It may not be unreasonable to assume that both those departments will realize that relator is entitled to his salary and that they will provide the same at the next session of the legislature.

For the reasons stated, the judgment of the court below will be reversed and the cause remanded with instructions to dismiss the writ of mandamus. and it is so ordered.