## No. 27941

**Fred E. Anderson, Carl H. Gustafson, Arthur C. Herzberger, Betty I. Neale, Richard H. Plock, Jr., Ruth S. Stockton, Ronald H. Strahle, and Ted L. Strickland v. Richard D. Lamm, Governor, State of Colorado; Daniel S. Whittemore, Controller, State of Colorado; Henry A. Foley, Executive Director, Department of Social Services, State of Colorado; Robert J. Ore, Executive Director, Department of Labor and Employment, State of Colorado; Anthony Robbins, Executive Director, Department of Health, State of Colorado; and G. Owen Smith, Acting President, Community College of Denver**

(579 P.2d 620)

Decided May 30, 1978. Rehearing denied June 19, 1978.

438

Tallmadge, Tallmadge, Wallace and Hahn, David J. Hahn, C. Thomas Bastien, for plaintiffs-appellants.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Stephen H. Kaplan, Assistant, for defendants-appellees.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

This case involves vetoes by the Governor of portions of the 1977 general appropriation bill, commonly known as the "Long Bill." The plaintiff-appellants are eight members of the Fifty-first General Assembly. The defendant-appellees are comprised of the Governor and various state officers. The complaint sought a declaratory judgment that the Governor's vetoes of nine portions of the Long Bill were invalid because they were improper item vetoes under the veto power given the Governor in *Colo. Const.* Art. IV, Sec. 12. Preliminary injunctive relief was also requested.

The Denver District Court granted the defendants' motion to dismiss the complaint. The court held that the complaint failed to state a claim because the portions of the Long Bill vetoed by the Governor were unconstitutional conditions incorporated in the bill in violation of *Colo. Const.* Art. III (separation of powers) and *Colo. Const.* Art. V, Sec. 32 (regulation of the contents of the Long Bill). The court did not reach the issue of whether the Governor made valid vetoes of these provisions under his item veto power. The court also held that the eight named plaintiffs had standing to sue only as individuals and not on behalf of the general assembly. The court denied the requested injunctive relief.

We affirm the district court's dismissal of seven of the vetoed portions of the Long Bill for failure to state a claim. However, we hold that the "M" and "C" headnotes to the Long Bill do not violate any constitutional provision and we therefore reverse the district court's dismissal of these claims and remand for a determination of the propriety of the Governor's vetoes of them.

## I. GENERAL PRINCIPLES

In the present posture of this case, we are not called upon to determine whether the Governor has properly exercised his item veto power.[1] The district court dismissed the lawsuit for failure to state a claim and, therefore, did not reach the veto issue. This court is only presented with the issue of whether the district court was correct in determining that the vetoed portions of the Long Bill were constitutionally invalid, thus precluding the appellants from bringing a challenge to the validity of the Governor's veto of these provisions.

This court has held, as a general rule, that "subject to constitutional limitations, the General Assembly has plenary or absolute power over appropriations and * * * it may attach conditions upon the expenditure thereof." *MacManus v. Love,* 179 Colo. 218, 499 P.2d 609. In the present case, the district court held that the various conditions attached by the general assembly to the Long Bill and vetoed by the Governor violated *Colo. Const.* Art. III and *Colo. Const.* Art. V, Sec. 32. Before proceeding to a discussion of each of the vetoed conditions, we will consider the applicability of these two constitutional provisions.

### A. *Separation of Powers*

■ The district court found that many of the vetoed conditions in the Long Bill violated the doctrine of separation of powers. Article III, the general separation of powers provision in the Colorado Constitution, reads as follows:

"The powers of the government of this state are divided into three distinct departments, — the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."

Although the concept of an absolute separation of functions is clear, it very often proves difficult to determine whether a power being exercised is executive, legislative, or judicial in character. Thus, this court has previously observed that: "The dividing lines between the respective powers are often in crepuscular zones, and, therefore, delineation thereof usually

---

[1] The Governor's veto power over items contained in the general appropriation bill is found in *Colo. Const.* Art. IV, Sec. 12. This section provides as follows:

"Section 12. Governor may veto items in appropriation bills — reconsideration. The governor shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be law, and the item or items disapproved shall be void, unless enacted in manner following: If the general assembly be in session, he shall transmit to the house in which the bill originated a copy of the item or items thereof disapproved, together with his objections thereto, and the items objected to shall be separately reconsidered, and each item shall then take the same course as is prescribed for the passage of bills over the executive veto."

should be on a case-by-case basis." *MacManus v. Love,* 179 Colo. 218, 499 P.2d 609.

 The executive power of the state is vested in the Governor, who is given the duty to see that the laws are faithfully executed. *Colo. Const.* Art. IV, Sec. 2; *People v. District Court,* 29 Colo. 182, 68 P. 242. In order to fulfill this duty to faithfully execute the laws, the executive has the authority to administer the funds appropriated by the legislature for programs enacted by the legislature. *MacManus v. Love, supra.* In this situation, the Supreme Court of Nebraska has aptly observed that: "It [the legislature] cannot administer the appropriation once it has been made. When the appropriation is made, its work is complete and the executive authority takes over to administer the appropriation to accomplish its purpose, subject to the limitations imposed." *State ex rel. Meyer v. State Board of Equalization and Assessment,* 185 Neb. 490, 176 N.W.2d 920. Thus, it follows that the general assembly is not permitted to interfere with the executive's power to administer appropriated funds, which includes the making of specific staffing and resource allocation decisions.

 In addition, the legislature may not attach conditions to a general appropriation bill which purport to reserve to the legislature powers of close supervision that are essentially executive in character. We are confronted with such a legislative encroachment on the executive in the present case with respect to appropriations that are conditioned upon certain reports to or approval from the general assembly's Joint Budget Committee.

A recent Massachusetts case well-illustrates the problem. In *In re Opinion of the Justices to the Governor,* _____Mass. _____, 341 N.E.2d 254, the Supreme Judicial Court had before it a provision in the general appropriation bill which specified that all state-funded jobs which become vacant during the fiscal year shall remain vacant unless there is a "critical need" to fill them. Two committees of the legislature were required to verify the "critical need." In response to the Governor's interrogatories, the court found this provision to be unconstitutional. The court observed that the power to determine whether a critical need exists is an executive power to be exercised over the expenditure of appropriated funds, and not one encompassed within the legislative power of appropriation. The court thus held that the provision was an unconstitutional invasion of the executive power. *Accord, People v. Tremaine,* 252 N.Y. 27, 168 N.E. 817.

### B. *Contents of the Long Bill*

 The district court also held that some of the vetoed portions of the Long Bill were is contravention of *Colo. Const.* Art. V, Sec. 32. This section provides:

"The general appropriation bill shall embrace nothing but appropriations for the expense of the executive, legislative and judicial departments of the

state, state institutions, interest on the public debt and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

This section has been interpreted to mean that, in the general appropriation bill, the general assembly may not include substantive legislation, nor may it amend or repeal a law. *Burciaga v. Shea,* 187 Colo. 78, 530 P.2d 508; *People ex rel. Clement v. Spruance,* 8 Colo. 307, 6 P. 831. *See also Carr v. Frohmiller,* 47 Ariz. 430, 56 P.2d 644; *State ex rel. Hueller v. Thompson,* 316 Mo. 272, 289 S.W. 338; *State ex rel. Prater v. State Board of Finance,* 59 N.M. 121, 279 P.2d 1042. The sole purpose of the Long Bill is to meet charges already created against the public funds by affirmative acts of the general assembly. *In Re House Bill No. 168,* 21 Colo. 46, 39 P. 1096. Thus, the Long Bill may only be used to provide funds for programs that have been separately authorized and specifically detailed in other bills.

With these general constitutional principles in mind, we now discuss the specific conditions in the Long Bill which were vetoed by the Governor.

## II. THE "M" AND "C" HEADNOTES

The Governor vetoed two parts of the 1977 Long Bill entitled the "M" headnote and the "C" headnote. The "M" headnote is a provision which regulates the amount of state money appropriated for programs for which federal funds are available.[2] It provides for a decrease in state funding if there is either an excess or a shortfall in federal funds. Forty-nine separate appropriations in the Long Bill were designated as coming under the "M" headnote. The "C" headnote has exactly the same effect as the "M" headnote, except that it applies only if the federal funds are available

---

[2] The complete text of this provision is as follows:
"SECTION 2. *Appropriation.* (1)
* * * *
"(d) Where the letter '(M)' appears to the right of the general fund figure, that general fund appropriation, when combined with related general fund transfers from the centralized appropriations in the division of accounts and control, is used to directly match a federally supported program and is the maximum amount of general fund moneys that may be expended in that program, except where otherwise provided. In the event that additional federal funds are available for the program, the combined general fund amount noted as '(M)' shall be reduced by the amount of federal funds received in excess of the figure shown in the 'federal funds' column for that program. In the event that the federal funds received are less than the amount shown in the 'federal funds' column, the combined general fund amount noted as '(M)' shall be reduced proportionately. In the event that the state matching requirements are reduced, the combined general fund amount noted as '(M)' shall be reduced proportionately. These provisions shall apply only to the general fund amount which remains unexpended at the time of the change in federal requirements or funding. It is intended that the general fund and federal funds shall be expended in equal proportioned amounts throughout the year."

from the Law Enforcement Assistance Administration.[3] Thirteen separate appropriations were designated as coming under the "C" headnote.

The Governor accompanied his vetoes of the "M" and "C" headnotes with the following message:

"'M's' were originally developed to safeguard state funds and to avoid unauthorized future commitments. Instead, they are now being used as a mechanism to subvert the Executive's constitutional duty to administrate. As such, the 'M/C' system clearly violates the separation of powers principle and is unacceptable."

The Governor has cited *MacManus v. Love,* 179 Colo. 218, 499 P.2d 609, in support of his position that these two headnotes violate the constitutional doctrine of the separation of powers. The district court agreed with the Governor.

In *MacManus v. Love, supra,* this court found the following provision in the Long Bill to be unconstitutional: "Any federal or cash funds received by any agency in excess of the appropriation should not be expended without additional legislative appropriation." We found that this provision was in contravention of the doctrine of the separation of powers because it was "an attempt to limit the executive branch in its administration of federal funds to be received by it directly from agencies of the federal government and unconnected with any state appropriations." The underlying principle crucial to this determination was the idea that "federal contributions are not the subject of the appropriative power of the legislature."

Despite the Governor's assertions, we do not perceive the same constitutional infirmities in the "M" and "C" headnotes. These headnotes purport only to condition the appropriation of state, not federal, funds. They do not limit the executive branch in its staffing, resource allocation, or general administration of the federal funds it receives. Nor do the headnotes repeal or amend any other piece of substantive legislation. They simply prescribe the amount of state funds which can be used when certain

---

[3] The complete text of this provision is as follows:
"SECTION 2. *Appropriation.* (1)
* * * *

"(e) Where the letter '(C)' appears directly to the right of the general fund figure, that general fund appropriation is used to match a federal Law Enforcement Assistance Administration (LEAA) program and is the maximum amount of general fund moneys that may be expended in that program, except where otherwise provided. The matching is direct general fund moneys and in each case is the state contribution to the cost of the program. No LEAA program will be matched with general fund moneys, except where there is a '(C)' notation. In the event that the LEAA cash funds received are less than the figure shown in the 'cash funds' column, the general fund amount noted as '(C)' shall be reduced proportionately for that program. In the event that the state matching requirements are reduced, the general fund amount noted as '(C)' shall be reduced proportionately. It is intended that the general fund and LEAA cash funds shall be expended in equal proportioned amounts throughout the year."

amounts of federal funds are available for use.

In essence, the legislature has been required by practical necessity to employ a formulary method for stating the amount of each of these appropriations. This is necessary because at the time the appropriation bill is passed it is impossible for the legislature to know how much federal funding will become available at a later time for each such program. The important point is that the legislature is exercising control only over the *amount* of *state funds;* no control is asserted in the Long Bill over how the money is to be allocated.

We hold, therefore, that the district court erred in finding that the "M" and "C" headnotes were unconstitutional as violative of *Colo. Const.* Art III or *Colo. Const.* Art. V, Sec. 32. As to these two headnotes, the appellants have stated a claim and we remand to the district court for a determination of the merits of the Governor's vetoes of the "M" and "C" headnotes.

## III. THE OTHER VETOED PROVISIONS

■ We hold that the district court properly dismissed the appellants' challenge to the other seven portions of the Long Bill which were vetoed by the Governor. We will discuss each of these provisions in order, together with our reasons for affirming the district court's decision.

■ (1) The Governor vetoed two portions of the Department of Social Services appropriation dealing with funds for County Administration. The first vetoed part is an allocation of funds based upon the number of full-time employees (FTEs) which the legislature believed each county should have.[4] The second vetoed portion of this appropriation is footnote 79, which makes certain specifications as to the number of full-time em-

---

[4] The italicized portion below is the only part of this appropriation vetoed by the Governor.
 "PART XIX
 "DEPARTMENT OF SOCIAL SERVICES
 * * * *
 "(3) COUNTY ADMINISTRATION
 "(A) Administration
 "Personal Services 79/ 79a/ $32,743,500

| | |
|---|---|
| *"Adams County* | *(211.2 FTE)* |
| *Arapahoe County* | *(69.1 FTE)* |
| *Boulder County* | *(135.0 FTE)* |
| *Denver County* | *(805.1 FTE)* |
| *El Paso County* | *(209.5 FTE)* |
| *Jefferson County* | *(163.6 FTE)* |
| *Larimer County* | *(114.5 FTE)* |
| *Mesa County* | *(70.5 FTE)* |
| *Pueblo County* | *(178.2 FTE)* |
| *Weld County* | *(109.1 FTE)* |
| *Balance of State* | *(564.6 FTE)"* |

ployees that can be assigned to specific job categories.[5] For example, 953 of the total FTEs are to be social workers, 454.6 FTEs are to be clerical staff, and 18.5 new FTEs are to be social workers in the area of child abuse. An FTE is not an allocation of a certain individual, but rather is defined in the Long Bill as the "budgetary equivalent of one position continuously filled full-time for the entire fiscal year and may be comprised of any combination of part-time positions or full-time positions."

In his vetoes of these two provisions, the Governor stated:

"I am vetoing the eleven lines containing county FTE limitations because the executive needs the flexibility to determine the proper allocation of manpower. This item not only infringes upon the Executive's authority, but on the counties' authority as well."

We agree that these conditions on the number of full-time employees in each county interfere with the executive authority to allocate staff and resources in administering the funds. Footnote 79 especially is invalid for attempting to allocate the number of full-time employees to be hired in certain job categories. In sum, these provisions are clearly in violation of the separation of powers doctrine.

■ (2) A condition upon an appropriation for Special Residential Child Care Facilities provides that no facilities whose reimbursement rate the previous year exceeded $620 per month can be given a rate increase above six percent without the approval of the Joint Budget Committee.[6] The Department of Social Services is required to present a thorough financial analysis on each facility to the Joint Budget Committee in order to receive a rate increase. The Governor's veto message reads: "This item

---

[5] The complete text of this provision is as follows:

"79/ Department of Social Services, County Administration, Personal Services — This appropriation provides 2,630.4 FTE to be allocated initially into the following work categories: 591.5 FTE eligibility technicians, 260.0 FTE homemakers, 953.0 FTE social workers, 454.6 FTE clerical staff, and 371.3 FTE other staff. Included in this appropriation are 18.5 new FTE for social worker positions for child abuse. Through the normal staff attrition process, it is intended that, by January 1, 1978, the county departments will have increased the social worker staff from 953.0 FTE to 971.5 FTE; thereby providing an additional 18.5 FTE for child abuse."

[6] The italicized portion below is the only part of this appropriation vetoed by the Governor.

"PART XIX
"DEPARTMENT OF SOCIAL SERVICES
* * * *
"(4) PUBLIC WELFARE
* * * *
"(B) Child Welfare
* * * *

"(2) Special Residential Child Care Facilities for an average case load of 978 children not to exceed $766.38 overall monthly payment per case *with no rate increase in excess of 6% being granted to facilities whose 1976-77 Social Services reimbursement rate is $620.00 a month or more until the Department of Social Services has presented a thorough financial analysis and recommendation for an appropriate rate increase to the Joint Budget Committee and said increase has been approved by the Joint Budget Committee.*"

requires approval by the Joint Budget Committee for rate increases. This is a discretionary decision to be made by the Executive under the separation of powers principle."

We hold that the requirement for Joint Budget Committee approval unconstitutionally infringes upon the executive's power to administer appropriated funds. Normally, the executive branch exercises its authority to make contracts and enters into agreements with various facilities as to the reimbursement rate. By imposing this condition, the legislature is not merely limiting the overall funds available for the program, but rather is attempting to undertake an executive function in deciding whether a rate increase is appropriate. In our view, this is a clear violation of the separation of powers doctrine.

■ (3) Footnote 29 to the Department of Health appropriation for Departmental Data Processing makes the appropriation contingent upon the presentation of a cost-benefit report and a five-year plan to the Joint Budget Committee by January 1, 1978.[7] The Governor's veto message on this provision reads: "This footnote requires the approval by the Joint Budget Committee for an appropriation request. The separation of powers problem is obvious."

This condition to the Departmental Data Processing appropriation for the Department of Health is also violative of the separation of powers. This particular requirement of a cost-benefit report and a five-year plan in effect gives the Joint Budget Committee a close supervisory role over the administration of the appropriated funds. As such, the requirement impermissibly infringes upon the executive's administrative authority.

■ (4) In the State Compensation Insurance Division portion of the Department of Labor and Employment appropriation, footnote 70a provides that ten additional full-time employees are to be funded if the Division reaches its projected case load by specified dates.[8] In addition, the

[7] The complete text of this provision is as follows:
"29/ Department of Health, Administration and Support, Departmental Data Processing — 5This appropriation is contingent upon presentation of a report to the Joint Budget Committee and the General Assembly, by January 1, 1978, providing the following data:
"1. An evaluation and cost-benefit analysis of all current data systems.
"2. A feasibility and cost-benefit analysis of consolidation of current systems.
"3. A 5-year plan for development of new systems, including needs assessment and cost-benefit analysis of each new system."
[8] The complete text of this provision is as follows:
"70a/ Department of Labor and Employment, State Compensation Insurance Division, Additional FTE — This appropriation provides 10 additional FTE contingent upon the Division reaching its projected case loads of 25,578 and 27,496 policies in effect as of June 30, 1977, and June 30, 1978, respectively. The Division is required to submit to the Joint Budget Committee, on a monthly basis, a report containing the following statistics for each month and cumulative for the fiscal year 1977-78:
"(1) Number of policies in effect;
"(2) Number of accidents reported;
"(3) Number of accidents per employer covered;
"(4) Average cost (loss incurred) per accident."

Division is required to submit *monthly* statistical reports to the Joint Budget Committee. The Governor vetoed this provision on the following basis: "This footnote allocates staffing contingent upon case load. Staffing is an administrative decision. Separation of powers violation is evident once again."

This provision is invalid for two reasons. First, the contingent funding of ten full-time employees is a clear interference with the executive authority to allocate staff and resources in administering appropriation. Second, the requirement of monthly reports to the Joint Budget Committee appears to be an attempt to include substantive legislation in the Long Bill. For these reasons, footnote 70a is invalid for contravening both the constitutional doctrine of separation of powers and the prohibition against including substantive provisions in the general appropriation bill.

 (5) In the Medical Programs Division portion of the Department of Social Services appropriation, footnote 84 contains an appropriation for an "MMIS Study."[9] Footnote 84 also transfers the appropriation for the study from the Medical Programs Division to the Legislative Audit Committee, and provides that the study report is to be made to the Joint Budget Committee. The Governor vetoed footnote 84 for the following reason: "Again, approval for a substantive program is made contingent on Joint Budget Committee review rather than executive approval."

The Governor's stated reason for this veto mistakenly assumed that the appropriation is contingent on Joint Budget Committee approval. In fact, this provision merely requires submission of the final study to the Joint Budget Committee. Nonetheless, footnote 84 is invalid for attempting to include substantive legislation in the Long Bill in violation of *Colo. Const.* Art. V, Sec. 32. The directive that the funds are to be transferred from the Medical Programs Division to the Legislative Audit Committee for the purpose of having the latter contract for a study of the MMIS program is substantive legislation that should be separately authorized in another bill.

 (6) Footnote 45a states that appropriations for the Division of Community Colleges cannot be used "directly or indirectly, for imple-

---

[9] The complete text of this provision is as follows:

"84/ Department of Social Services, Medical Programs Division — MMIS Study — These funds are to be transferred to the Legislative Audit Committee for the purpose of contracting for a study of the MMIS program. The study shall include a review of the request for proposal, with particular attention to the completeness and fairness of the requirements of the proposal. The study shall also review the projected cost savings and information improvements that are anticipated by the department as a result of MMIS implementation. The study shall either concur with these projections or present alternative figures. Only the funds necessary for the completion of this study shall be expended out of this appropriation. The completed study shall be submitted to the Joint Budget Committee no later than January 1, 1978."

menting collective bargaining procedures, prior to legislative approval."[10] The Governor vetoed this provision for the following reason:

"This footnote prohibits the use of funds for implementing collective bargaining procedures and couches substantive rule making in language purporting to relate to the allocation of funds. The long bill cannot offer substantive laws, it can only say how much money shall be spent. Because this footnote is substantive in nature, it must be vetoed."

We agree that footnote 45a is invalid for enacting substantive legislation in the Long Bill. Additionally, it interferes with the executive's administrative authority. In attempting to legislate the subject matter upon which the Community Colleges can spend the appropriated funds, the general assembly is in fact enacting affirmative legislation which should not be contained in the Long Bill. Moreover, the requirement of prior legislative approval is an attempt by the legislature to make a decision which is executive in nature. Thus, footnote 45a violates both *Colo. Const.* Art. III and *Colo. Const.* Art. V, Sec. 32.

## IV. CONCLUSION

Although several other issues have been presented to us by the parties, we do not need to decide them in the present posture of the case. First, since the eight plaintiffs are pursuing the lawsuit as individuals, we are not called upon to decide whether the other ninety-two members of the general assembly are indispensable to a lawsuit on behalf of the general assembly. Second, the parties have now agreed that the question of whether or not a court has the power to issue a preliminary injunction against the executive is moot.

The judgment of the district court is affirmed in part, reversed in part, and the cause is remanded for a determination of the validity of the Governor's vetoes of the "M" and "C" headnotes.

---

[10] The complete text of this provision is as follows:

"45a/ Department of Higher Education: Division of Community Colleges, Administration; Arapahoe Community College; Denver Community College; El Paso Community College; Lamar Community College; Morgan County Community College; Otero Community College; Trinidad Community College — None of these appropriations shall be used, directly or indirectly, for implementing collective bargaining procedures, prior to legislative approval."