Mr. Brad Leonard State Budget Director Office of State Planning and Budgeting 102 State Capitol Denver, Colorado 80203
Mr. Dan Whittemore State Controller Department of Administration 7th Floor 1525 Sherman Street Denver, Colorado 80203
Dear Messrs. Leonard and Whittemore:
In your letter of August 24, 1979, you requested an opinion on several questions relating to the nature of federal indirect cost recoveries and to headnote 12 of section 1 on indirect cost recoveries in Senate Bill 525, the Long Bill for fiscal year beginning July 1, 1979. After a preliminary discussion of federal indirect cost recoveries, your questions will be answered in the order asked.
Federal indirect cost recoveries are generally governed by Federal Management Circular (FMC) 74-4 (34 CFR 255), which in turn was incorporated into OASC 10. Indirect cost recoveries for grants and contracts with educational institutions are now governed by Office of Management and Budget (OMB) Circular A-21 (replacing FMC 73-8).
In attachment A, F.1, of FMC 74-4, there is a general definition of indirect costs for which recovery is permitted and which therefore may be included in a grant proposal or contract:
 Indirect costs are those (a) incurred for a common or joint purpose benefiting more than one cost objective, and (b) not readily assignable to the cost objective specifically benefited, without effort disproportionate to the results achieved. The term "indirect cost," as used herein, applies to cost of this type originated in the grantee department, as well as those incurred by other departments in supplying goods, services, and facilities, to the grantee department.
In section E.1 of OMB Circular A-21, there is a general definition of indirect cost for which recovery is permitted in regard to educational institutions:
 Indirect costs are those that are incurred for common or joint objectives and therefore cannot be identified readily and specifically with a particular sponsored project, and instructional activity, or any other institutional activity.
Indirect costs are to be contrasted with direct costs, which are costs that can be identified accurately and specifically with a particular cost objective or a particular sponsored project. Indirect costs are included in the grant to the grantee agency for nonspecified, nonidentified costs that are incurred both by the grantee agency and by other state agencies and departments.
It should be further noted that the Office of Management and Budget does not restrict the subsequent use of funds received by a state as reimbursement for indirect costs by rule, regulation or policy. (See attached letter from John J. Lordan, chief, Financial Management Branch, OMB, dated October 25, 1979).
Therefore, while the federal government does impose restrictions on the calculation and determination of indirect costs for which recovery is allowed, it does not impose restrictions on the use of such funds once these funds are remitted to the state agency which has the grant or contract. Apparently the concern of the federal government is limited to being assured that the indirect costs were claimed consistent with its regulations.
As mentioned earlier your questions will be answered in the order asked.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Are indirect cost recoveries and reimbursements federal funds or cash funds?
 Based upon the following analysis, it is my conclusion that indirect cost recovery funds are federal funds, but that conclusion should be placed in the perspective of the following discussion.
2. Under what conditions can they (federal indirect cost recoveries) be allotted to and expended by the executive branch as having no impact on the general funds?
 As discussed in response to question 1, expenditure of federal indirect cost recoveries by the executive branch identified in the Long Bill would not impact general fund moneys. The result would, however, be a dollar shortfall to the department originally expecting to receive those funds.
3. Is the following part of headnote 12 to the 1979-80 Long Bill contrary to the principles set forth in MacManus v.Love? (The entire language of headnote 12 has been included here for reference, and the part to which you referred is underlined.)
 (12) The term "overhead reimbursement" or `indirect cost recoveries' means reimbursements made to an agency of the state from federal funds or other nonstate funds for the indirect expenses which have been incurred by the state and operating sponsored programs. All overhead reimbursements generated from sponsor programs in higher education institutions are appropriated as cash funds for "education and general" expenditures. The related general fund appropriation shall be reduced by the amount of indirect cost recoveries received in excess of the figures shown with the footnote to the cash fund appropriation.
 The principles in MacManus v. Love, supra, to which you refer were discussed above in response to question 1. Briefly, those principles indicate that while the general assembly may appropriate state funds, it may not appropriate federal funds.
4. Since there is no such headnote covering other state departments, may they, under conditions set in the executive branch, spend such additional indirect costs as may be recovered within federal grant payments?
 The general assembly has indicated its clear intention that when indirect cost recoveries placed in the "cash funds" column are received in excess of the amount listed, the related general fund appropriation should be reduced accordingly.
ANALYSIS
Regarding question #1, underlying the question is your fundamental concern for the proper procedures for the expenditure of federal indirect cost recoveries. If these funds are properly designated as "cash" funds, then they would be state funds to be appropriated by the general assembly, and subsequently could be transferred by the governor, upon the recommendation of the controller, pursuant to C.R.S. 1973, 24-30-201(b). However, if the funds are properly designated as federal funds, the general assembly would not have appropriation power, and the expenditure process would be in the hands of the executive branch underMacManus v. Love, 179 Colo. 218, 499 P.2d 609 (1972). In this latter situation, the general assembly would retain the authority to condition the expenditure of state funds upon the receipt of these federal funds under MacManus andAnderson v. Lamm, 195 Colo. 437, 579 P.2d 620 (1978).
This technical analysis however does not address the true nature of your concern which is control of expenditure of these funds. In either situation, both the general assembly and the executive have control mechanisms available in order to control spending and to administer activities, programs, divisions and departments. Because of these control mechanisms, for virtually every situation, it is not critical to the budget appropriation process or the administration process, whether these funds are "federal" funds or "cash" funds. For example, neither cash funds nor federal funds are subject to the seven percent limitation on general fund spending in C.R.S. 1973, 24-75-201.1, as amended.
An examination of the Long Bill indicates inconsistent treatment of federal indirect cost recoveries by the general assembly. In the 1979-1980 Long Bill, the general assembly identified and treated such funds in two very distinct ways, with no explanation of the difference. For example, indirect cost recoveries are identified as federal funds in the appropriations for the Department of Local Affairs and the Department of Natural Resources. However, in the appropriations for various institutions of higher education, the Department of Education, the Department of Military Affairs, the Office of State Planning and Budgeting, and the Department of Social Services, such funds are designated as cash funds. Interestingly, the indirect cost recoveries of the Department of Social Services had been designated as federal funds until this year. (See Appropriations Report, 1979-1980, p. 137.)
The Colorado Supreme Court has consistently held that federal funds cannot be appropriated by the general assembly, although the expenditure of state funds may be conditioned upon the receipt of federal funds. As stated by the court inMacManus, supra at 222, and as reiterated inAnderson, supra at 625:
 (F)ederal contributions are not the subject of the appropriative power of the legislature.
As indicated in MacManus, supra, federal funds are "custodial" in nature, and are provided the state in order to effect a federal purpose. Moreover, the Colorado Supreme Court stated in Anderson, supra, at p. 625, that the general assembly may not limit the executive branch in its "general administration of the federal funds it receives."
The source of federal indirect cost recoveries is the federal government. Such funds are received by the executive branch directly from agencies of the federal government, and such funds are made available by the federal government in order to accomplish a federal purpose.
Based upon the decisions of the Colorado Supreme Court, includingMacManus, supra and Anderson,supra, and upon an analysis of these funds it is my opinion that federal indirect cost recoveries are "federal" funds.
Control Mechanisms Available to the General Assembly and theExecutive
In reality, however, it is considerably less important whether federal indirect cost recoveries are technically federal funds or cash funds. An analysis of the various statutory and practical mechanisms available to both the executive and the general assembly make it clear that in virtually every instance a reasonable degree of control is available to each of these branches of government. Moreover, as stated earlier, neither cash funds nor federal funds are subject to the 7 percent limitation on general fund spending.
The general assembly has identified over $13 million in federal indirect cost recoveries in the 1979-1980 Long Bill. These funds were identified in some departments as federal funds and in others as cash funds.
The purpose of the general assembly in identifying such funds in the Long Bill serves several expenditure control purposes.
The general assembly makes an initial determination of how much money it believes is necessary to fund a particular function, program, division, or department. That amount is designated as "total funds." Then, that total amount is broken down into general fund, cash fund, and federal funds. The point is that the general assembly establishes an overall dollar figure for an activity, program or division, and then within that total figure, determines the mix among the various sources of revenue.
Should the executive transfer money away from a department, be it general fund, cash fund, or federal fund money, the department will experience a dollar shortfall because all of those three sources were considered and calculated when the general assembly determined the total funds to be available.
Thus the first way the general assembly asserts control is through its mechanism of mixing the three sources of funds to determine the total amount of money it believes necessary for a particular activity, program or division. If any of that money is utilized by the executive branch for other activities, programs, divisions, or departments, it will represent a shortfall to the first department.
The general assembly has a second control mechanism which was sanctioned by the Colorado Supreme Court in Anderson v.Lamm, supra. This is the technique of conditioning the expenditure of state funds on the receipt of federal funds. This control mechanism is the "(M)" or "(C)" headnote in the Long Bill. In those instances in which federal indirect cost recoveries were identified as federal funds in the 1979-1980 Long Bill, no "(M)" or "(C)" was attached thereto.
The general assembly has also implemented a similar control mechanism with cash funding in headnote 12 and in the cash funds headnote (section 2(1)(f)) to the 1979-1980 Long Bill. This control mechanism provides that when cash funds or federal funds are available above the dollar amounts specified in the Long Bill, the corresponding general fund amount is to be reduced accordingly.
The general assembly could clearly and directly apply this restriction to all federal indirect cost recoveries, as it has sought to do with those identified as cash funds.
A third control mechanism available to the general assembly is the funding decision in the following year. If, for example, identified federal indirect cost recoveries are transferred from one item to another the general assembly could reduce the total funding for the first activity program or division in the subsequent fiscal year.
The executive branch also has certain control mechanisms available over federal indirect cost recovery funds identified in the Long Bill which it could use to provide flexibility in the administration of programs, activities, divisions, or departments even if these funds were not federal funds.
The first of these is the authority of the Governor to transfer between appropriations, upon the recommendation of the controller and after review by the Office of State Planning and Budgeting. C.R.S. 1973, 24-30-201(1)(b), 24-37-405(1)(k). Therefore, even if federal indirect cost recoveries were cash funds, and were therefore subject to appropriation by the general assembly, such funds could be transferred by the Governor to another appropriation.
The second control mechanism available to the executive branch is found in C.R.S. 1973, 24-30-202(19). This statute provides that if any money is paid out from any appropriation, and such money or any part thereof is refunded to the state, "the controller is authorized to order the money to be credited to the appropriation or fund from which it was originally made." This authority would permit the controller to credit federal indirect cost recovery monies back to an agency to which an appropriation of such funds had been made, and subsequently such funds could then be transferred out by a line item transfer.
Therefore, both the general assembly and the executive branch have available certain mechanisms which provide needed flexibility in appropriating and administering funds.
There is also another practical reality here, and that relates to the federal flexibility built into most grants. Federal grants generally have several line items, including, for example, personnel costs, traveling costs, and indirect cost. Most federal grant recipients are permitted by the federal government to transfer within the grant line items a certain amount, often $10,000 or 5 percent of the grant, whichever is greater. Therefore, it is conceivable that certain monies in a grant identified for federal indirect costs could be legally spent by the recipient agency on personnel, travelling or office space. This provides flexibility to the recipient agency or department to effect the federal purpose of the grant.
Because of the various built-in methods of flexibility available to both of these branches of government, the technical interpretation that federal indirect cost refunds are federal funds is not critical to the budget/appropriation process or to the administration process.
It should be noted that there are also federal indirect cost recovery funds which are not identified in the Long Bill. For example, in the fiscal year 1978-1979, approximately $1.3 million of such funds were not so identified. This money was deposited in the general fund as a general type of reimbursement for federal indirect costs incurred by the state which were not identified either as a part of the state's "statewide cost allocation plan" for federal indirect cost recoveries or as costs distributed to departments and agencies through direct billing.
Interestingly enough, if all of such funds were identified in the Long Bill, either as cash funds or as federal funds, it would permit the spending of an additional $1.3 million of monies which would not be subject to the 7 percent limitation. However, even if such federal indirect cost recovery funds are not identified in the Long Bill, they remain available to be used as a reimbursement to be credited pursuant to C.R.S. 1973,24-30-202(19) are discussed supra.
Therefore, while it is my opinion that federal indirect cost recoveries are federal funds, the more critical issues involved actually relate to the balance needed between the general assembly's authority to appropriate funds, and the executive's authority to administer.
Regarding question #2, as to those federal indirect cost recoveries not identified in the Long Bill, there would be an impact on the general fund simply because presently such funds now are deposited directly in the general fund.
In practice, the executive branch has established procedures on the expenditure of indirect cost recoveries in the fiscal rules, chapter 5, section 6.00-6.34. These rules apply, with the exception of elected officials pursuant to C.R.S. 1973, 24-2-102(4), "to all state agencies that have programs or contracts financed in part by federal agencies, nonstate entities, and other state agencies." (6.11).
Thus, there is already an established mechanism for allotting and spending federal indirect cost recoveries as set forth in fiscal rules chapter 5, sections 6.33 and 6.34.
The executive also has available the mechanisms in C.R.S. 1973,24-30-201(1)(b) and 24-30-202(19), as discussed in response to question 1. The Governor, working with the controller, with the Office of State Planning and Budgeting pursuant to C.R.S. 1973, 24-37-405(1)(m), and with the heads of the state agencies, has the constitutional responsibility to administer the federal funds received by the various agencies within the context of the Long Bill.
Regarding question #3, the second sentence in headnote 12 is technically contrary to the principles in MacManus v.Love, supra, because the general assembly is attempting to appropriate federal funds. However, the practical results would not be significantly different than if such funds have been designated as "federal funds," rather than "cash funds," for "education and general" expenditures of the affected institutions of higher education.
The third sentence of headnote 12 is not in violation of the principles set forth in MacManus v. Love,supra. The language of the third sentence is analogous to an "(M)" headnote which was found to be constitutional inAnderson v. Lamm, supra. In responding to this question, it does not matter whether the federal indirect cost recoveries are designated as "federal" or "cash" funds. The general assembly is not restricting the executive branch in the general administration of federal funds.
As with the language of the "(M)" headnote, and as the Colorado Supreme Court stated in Anderson v. Lamm,supra at 625, the language "simply prescribe(s) the amount of state funds which can be used when certain amounts of federal funds are available." And as the court further stated at pp. 625-626, "the important point is that the legislature is exercising control over the amount of state funds" (emphasis original).
Therefore, while the general assembly may not appropriate federal funds, it may condition the expenditure of state funds upon the receipt of other funds.
Regarding question #4, your question assumes that the third sentence of headnote 12, which mandates a reduction in a general fund appropriation when indirect cost recoveries are received in excess of the amount listed, and are identified as cash funds, applies only to programs in higher education. Whether that sentence has limited applicability, or general applicability to all indirect cost recoveries identified as funds is unclear from its language or context.
However, section 2(1)(f) of the Long Bill relating to "cash funds" clarifies any uncertainty. That provision indicates that when overhead reimbursements (interest cost recoveries) are placed in the "cash funds" column, the related general fund appropriation is to be reduced when additional overhead reimbursements are received.
Even though it is my opinion that federal indirect recoveries are federal funds rather than cash funds, the intention of the general assembly is clear here and should be given effect. Interestingly, however, no similar intention can be found relating to federal indirect cost recoveries and the related general fund appropriations when the indirect cost recoveries are identified as federal funds in the Long Bill.
SUMMARY
1. Federal indirect cost recoveries are "federal" funds rather than "cash" funds. 2. The general assembly may condition the expenditure of state funds upon the receipt of federal funds.
I hope this information will be of assistance.
Very truly yours,
 J.D. MacFARLANE Attorney General
FEDERAL GRANTS EXECUTIVE BRANCH GOVERNOR LEGISLATURE
S.B. 525 (1979 Session)
C.R.S. 1973, 24-30-201(1)(b) C.R.S. 1973, 24-37-405(1)(k) C.R.S. 1973, 24-30-202(19) C.R.S. 1973, 24-2-102(4)
ADMINISTRATION, DEPT. OF Accounts Control Div. of PLANNING BUDGETING DEPT.
1. Federal indirect cost recoveries are "federal" funds rather than "cash" funds. 2. The general assembly may condition the expenditure of state funds upon the receipt of federal funds.