Mr. Brad Leonard Office of State Planning Budgeting 102 State Capitol Building Denver, Colorado 80203
Dear Mr. Leonard:
This is in response to your inquiry of February 21, 1980, in which you requested an opinion on two questions involving interagency buyer-seller relationships and the authority of the executive branch to increase the spending authority of the seller agency. The first question related to the allocation of central pots. That question will be addressed in a subsequent letter to follow shortly. This opinion is directed at your second question relating to increased spending authority as a result of one state agency purchasing additional services from another.
QUESTION PRESENTED AND CONCLUSION
Specifically, you ask the following question:
If an agency wishes to contract at a level higher than that set forth in the appropriation bill for services from a selling agency, may the executive branch increase spending authority in the selling agency to reflect the higher contracted amount?
 My conclusion is "yes," so long as the buying agency is purchasing services necessary for it to perform its statutory duties and to the extent that the buying agency has sufficient appropriated or non-state funds to purchase such services.
ANALYSIS
Your question presents a situation in which one state agency wants to buy additional services from another state agency. The buying agency must first have the statutory authority to perform certain functions for which it is seeking additional services. For example, the buying agency may have determined that it needed additional ADP services, or legal services, or hearing officer services or residential services for the developmentally disabled, in order to carry out the statutory duties. Second, the buying agency must have sufficient funds, either appropriated or non-state, to purchase these additional services. Given these two requirements, the problem you raise is that the selling state agency may not have sufficient spending authority to utilize the additional funds and therefore may not be able to provide the needed services to another state agency.
The starting point for analysis is that the general assembly has plenary or absolute power over the appropriation of state funds, subject to constitutional limitations. MacManus v.Love, 179 Colo. 218, 499 P.2d 609 (1972); Anderson v.Lamm, 195 Colo. 437, 579 P.2d 620 (1978).
It is imperative to remember that the situation you present would not increase the total amount of state dollars expended in any fiscal year. The money in question has already been appropriated (unless it is non-state money), and the only issue is who may spend that money, and for what purposes. All that is being addressed is whether, within the finite and precise total dollar level established by the Long Bill, supplementals, or non-state funds, agencies can purchase additional services from other state agencies, with the selling agencies receiving increased spending authority to provide those services.
The Long Bill sometimes recognizes these internal state government purchases by identifying them with a "(T)," as can be seen for example in the Department of Administration's appropriation for ADP services and for hearing officers, and the Department of Law's so-called Oregon plan appropriations. This type of contractual relationship involves the transfer of funds from one state agency to another, such funds being designated as cash funds. In section 2(f) of the 1980-81 Long Bill, cash funds are defined as "non-general fund state sources." These funds generally include money received by the state from outside sources such as tuition and license fees. The general assembly has also included interagency transfers within the definition of cash funds.
In section 2(f), the general assembly has indicated that when "cash" funds in excess of the appropriated amount are earned, the related general fund appropriation is to be reduced. However, this language has very limited applicability. It applies only to "non-general fund state sources"; for example, license fees or tuition. It does not apply to general fund moneys or to non-state moneys. This provision in section 2(f) logically applies to situations where there is a state program financed in part by user fees, such as fish and game activities or higher education. In such situations, this language only serves to prevent a state agency from benefitting from a windfall.
In addition, this headnote has not been read to apply to the type of contractual relationships in question here. This interpretation of the headnote stems from consistent past actions of OSPB, the controller, and the Joint Budget Committee.
The concensus appears to be that this language is directed at situations where the mix of funds for the total appropriated amount changes during a fiscal year. A good example may be found in the funding in the Department of Law prior to the Oregon plan. The legal services for the Department of Revenue were paid for in part by the general fund and in part by money from the highway users tax fund, in approximately a 35 percent to 65 percent proportion. Over the course of a year, it would become apparent that the fund mix should be changed and that the cash funds coming to the Department of Law, those from the Highways Users' Tax Fund, would have to be altered vis a vis the general fund money. Clearly, if the cash fund (HUTF) amount increased, the general fund amount would decrease. It should be noted that section 2(f) does not apply to the statutory transfer authority in C.R.S. 1973, 24-30-201(1)(b). SeeAnderson v. Lamm, supra.
There are clearly restrictions on the expenditure of state funds. The conclusion of this opinion does not interfere with or violate those restrictions. For example, article V, section 33 of the Colorado Constitution, and C.R.S. 1973, 24-30-202(5)(a) indicate that state funds are not to be expended except upon appropriation or unless otherwise authorized by law. In the situation here, we are assuming that the request of the buying agency is consistent with its appropriation, or alternatively that non-state funds are involved. In essence, there is no impact on the appropriation process.
Another restriction on general fund spending appears in the 7 percent limitation in C.R.S. 1973, 24-75-201.1, as amended. The contractual relationship discussed herein and the additional spending authority granted would not in any way interfere with the intent, purpose and implementation of that expenditure limitation. This limitation would not in any way be breached or violated by the executive branch spending authority under this situation. Any general fund appropriation would already have been made to the buying state agency, and calculated for purposes of the 7 percent limitation.
In fulfilling its constitutional responsibility for appropriating state funds, the general assembly has recognized the need for administrative flexibility and has authorized "transfers between appropriations," as recommended by the controller, as reviewed by the Division of Budgeting, Office of State Planning and Budgeting, and as approved by the Governor. C.R.S. 1973,24-30-201(1)(b) and 24-37-405(1)(k) (Supp. 1979).
Further, it is well recognized in statute and case law that the administration of the budget, once appropriated, is an executive branch function. See C.R.S. 1973, 24-37-403;Anderson v. Lamm, supra. As set forth in C.R.S. 1973, 24-1-104 and as inherent in the duties of the Governor under article III, and article IV, section 2, Colo. Const., the executive has the responsibility for administering appropriations once they have been made, and for formulating and administrating policies of the executive branch of state government.
In analyzing your inquiry, the consequences of a negative response need to be addressed. Should the executive not be able to increase spending authority under the conditions set forth here, the buying agency would either have to purchase the needed services on the outside, which in certain cases such as legal services or hearing officer services is prohibited, or not perform its statutory duties as it sees fit, even though it has sufficient funds to do so.
These results are illogical and would severely hamper the administration of executive duties functions. Such results would not serve to enhance the general assembly's control over state fund appropriations. Rather, such results would only create an unnecessary impediment to the effective working of state government. Moreover, such results would be in sharp contrast to the flexibility granted the executive to administer state funds, including transfer authority, once the appropriation has been made.
Perhaps more than a legal problem, your question raises the issue of accountability. In other words, if the executive is going to increase spending authority for a given state agency, there must be an adequate record thereof with the necessary approval of the executive. Presently, in the few situations of buyer-seller relationships where a need for increased spending authority exists, the matter is handled by formal written contract between the two state departments. The Office of State Planning and Budgeting is kept informed, as is the Joint Budget Committee.
This is an area in which OSPB, the controller, and the Governor could agree upon established procedures to assure the necessary approval, and the necessary accountability to the general assembly and the public.
Therefore, based upon the foregoing analysis, it is my opinion that if a state agency wishes to contract at a higher level than that set forth in the appropriations bill or any supplementals for services from a selling agency, the executive branch may increase spending authority in the selling agency to reflect the higher contracted amount, so long as the buying agency has been appropriated sufficient state funds or is the recipient of sufficient non-state funds.
SUMMARY
It is my opinion that if a state agency, having sufficient appropriated or non-state funds, or wishes to contract for additional services with another state agency, at a higher level then that designated in any appropriations bills, the executive branch may increase the spending authority for the selling agency to reflect the higher contracted amount.
Very truly yours,
 J.D. MacFARLANE Attorney General
APPROPRIATIONS CONTRACTS STATE AGENCIES PUBLIC FUNDS
S.B. 525 (1975)
C.R.S. 1973, 24-30-201(1)(b)
Colo. Const. art. III
Colo. Const. art. IV, § 2
ADMINISTRATION, DEPT. OF PLANNING BUDGETING DEPT. Budgeting, Div. of
A state agency, having sufficient appropriated or non-state funds, and wanting to contract for additional services with another state agency, at a higher level than that designated in the Long Bill, may do so and the executive branch may increase the spending authority of this "selling" agency accordingly.