Governor Roy Romer Executive Chambers 136 State Capitol Denver, CO 80203-1792
Dear Governor Romer:
I am writing in response to your correspondence dated June 29, 1990 requesting a legal opinion regarding the authority of the Colorado General Assembly to control expenditure of "custodial funds."
QUESTION PRESENTED AND CONCLUSION
Is the Legislature's plenary power of appropriation limited with respect to custodial funds received by the executive branch of government?
 Yes. The legislative power of appropriation does not extend to those funds for which the executive branch serves as a custodian or trustee for limited purposes.
ANALYSIS
It is an axiom that the power of the General Assembly over appropriations of state funds is plenary, subject only to constitutional limitations. Colorado General Assembly v.Lamm, 704 P.2d 1371, 1380 (Colo. 1985); Anderson v.Lamm, 195 Colo. 437, 579 P.2d 620, 623 (1978); MacManusv. Love, 179 Colo. 218, 499 P.2d 609, 610 (1972). ArticleIII of the Colorado Constitution requires separation of the respective powers of the legislative and executive branches. This constitutional provision has been interpreted to prohibit the Legislature from exercising its budgetary powers to interfere with the executive responsibility for administering state government. Anderson v. Lamm, supra.
The boundary between the respective powers of the legislative and executive branches is not a clearly fixed frontier. Court decisions which have found violations of Article III have considered the circumstances of each alleged incursion on a case-by-case basis and identified attempts by one branch of government to usurp fundamental powers of another branch.
In a series of cases spanning a dozen years, the Colorado Supreme Court delineated a narrow class of funds administered by State government which fall outside the broad sweep of the legislative power of appropriation. At one point in time this exception was defined to comprise federal grant funds received by the state to carry out federal programs. See Anderson v.Lamm, supra; MacManus v. Love,supra. In 1985 the court clarified that the key to this controversy was not whether particular funds derived from a federal source or a private source, but whether "the role of the state in administering the fund, as determined by the external source generating the revenue, was essentially custodial in nature." Colorado General Assembly v. Lamm, 700 P.2d 508,525 (Colo. 1985).
In its most recent, and most exhaustive, discussion of this topic, the court expanded upon this theme. It is the nature of the restrictions upon the funds, and not their source, that determines whether the legislature constitutionally may control expenditures through the appropriation process. ColoradoGeneral Assembly v. Lamm, 738 P.2d 1156 (Colo. 1987). There the court minutely examined the nature of the restrictions found in several federal block grant programs enacted during the Reagan administration. As a general rule, those grant programs permitted the state considerable discretion to choose the specific objectives for which federal funds would be spent to further particular federal goals. The governor, the court held, possesses constitutional authority to make specific staffing and resource allocation decisions among several options which are consistent with federal purposes. The executive role with respect to block grant funds amounted to administering a fund that was essentially custodial in nature. 738 P.2d at 1173.
But the governor's authority to expend federal block grants is subject to limitations as well. The court concluded that legislative appropriation was required where federal law permitted the state to transfer funds from one block grant program to another. The degree of flexibility permitted the state by federal law in those circumstances was held to be inconsistent with a mere custodial role. Even though the source of the funds was the federal government and the ultimate beneficiaries were not state agencies, the legislature had constitutional authority to appropriate such transfers, subject to gubernatorial veto.738 P.2d at 1173.
The cases discussed above provide parameters to the respective powers of the legislature and the governor. The circumstances of each case provide examples of instances where the Colorado Supreme Court has found that one branch has gone too far by interfering with fundamental functions of another branch. They do not provide a formula for determining whether other funds for which the State has responsibility are custodial. Future determinations must turn on a careful examination of the nature of the specific funds, starting with the terms under which they have been provided to the state.
In the first General Assembly v. Lamm decision, the Colorado Supreme Court set out the following definition of "custodial funds":
 funds not generated by tax revenues which are given to the state for particular purposes and of which the state is a custodian or trustee to carry out the purposes for which the sums have been provided. . . .
700 P.2d at 524. Central to the court's concept of custodial funds is a requirement that the state's role must be that of a guardian or safekeeper of funds, rather than the outright owner of the moneys. Compare Webster's Third NewInternational Dictionary at 559 (1971) ("custodial" is defined as "relating to or marked by guardianship or maintaining safely"). The governor's ability to expend such funds in the absence of legislative appropriation is premised on his limited role to administer expenditure of the moneys consistent with policy directives imposed by the source of the funds. If those policy decisions have not been made, then legislative appropriation is necessary. Otherwise, the governor improperly would be exercising a legislative function.
If the state itself generates funds, whether by tax revenues, user fees or otherwise, it becomes very difficult to sustain the argument that state government acts simply as a custodian. Similarly, if moneys are provided voluntarily to the state from an outside source without restriction on their use, then it is constitutionally necessary that the legislature make expenditure decisions through the appropriation process.
One example of custodial funds apart from the federal grant context, is the situation where moneys are provided to the state subject to an express or constructive trust to be expended for a designated objective, e.g., erection of a monument or purchase of a work of art. The state is free to decline such a gift. However, once it has accepted the gift and its terms, then state government is obligated to satisfy the restrictions as a condition of expenditure. Under those circumstances the executive branch functions as a custodian to administer the funds consistent with the terms of the donation. Legislative appropriation is not required.
This analysis also applies to state recoveries of money through litigation pursuant to state or federal law. Court judgments which award the state general damages or attorneys fees and costs pursuant to federal or state law ordinarily amount to a form of unconditional compensation to the state that is subject to the legislative power to appropriate or to make statutory provision for expenditure. In certain instances, however, the terms of the court order may specify that recoveries are intended to benefit a certain class or are intended for use for specified purposes (e.g., establishment of a trust fund to return money to defrauded consumers or to benefit persons similarly situated through future enforcement of consumer laws). In such instances, restricted court awards may properly be considered custodial funds not subject to appropriation.
This is not to say that the General Assembly has no role whatsoever concerning expenditures of custodial funds. In the course of the state's budget process the General Assembly may request information on the use of custodial funds by executive agencies in order to determine allocations of other appropriated funds. However, the legislature may not redefine custodial funds in a manner inconsistent with the decisions of the judicial branch. Expenditures of custodial funds by state agencies are subject to financial audit by the state auditor under his constitutional and statutory authority. See § 2-3-103, C.R.S. (1990 Supp.); Colo. Const. art. V, § 49. Since custodial funds are the responsibility of state government to administer, expenditures normally will be subject to the general statutory requirements that pertain to spending other types of state funds (e.g., the fiscal rules, personnel laws and procurement code requirements).
Authority to expend custodial funds does not expand the substantive powers of a state official or agency beyond those already conferred by statute or constitution. As a general rule an executive agency may not use custodial funds to engage in programs for which it has no existing statutory or constitutional authority. Where the scope of statutory powers is in doubt, the General Assembly retains the power to enact legislation precluding an executive agency from engaging in specified activities or programs, regardless whether funded by custodial funds or otherwise. Passage of such legislation would, of course, be subject to the gubernatorial veto power.
SUMMARY
Since your letter did not raise any particular disputed situation, I have discussed the principles governing expenditures of custodial funds in very general terms. The key lesson is that custodial funds amount to a very narrow exception to the general constitutional requirement of legislative appropriation. Any claim that specific funding is not subject to appropriation must be carefully examined in light of each set of particular circumstances. Ordinarily a presumption exists that appropriation is necessary until the contrary is established. Should you wish an opinion concerning a specific situation, it would be appropriate to examine those facts in a separate opinion.
Sincerely,
 DUANE WOODARD Attorney General
LEGISLATURE GOVERNOR PUBLIC FUNDS
Colo. Const. art. III
Colo. Const. art. V, § 49
§ 2-3-103, C.R.S. (1990 Supp.)
GOVERNOR, OFFICE OF
The legislative power of appropriation does not extend to a narrow class of moneys defined as custodial funds.