Questions Presented and Answers
Question No. 1: Are custodial funds, as defined in your opinions 90-16 and 91-1, eligible for investment in non-interest bearing general fund warrants or does doing so violate the Treasurer's fiduciary duties?
Answer No. 1: Whether a particular custodial fund is eligible for investment in non-interest bearing general fund warrants depends upon the specific nature of the custodial fund. To decide whether a particular custodial fund is eligible for investment, one must examine the constitutional or statutory provision, court order, contract or other legal authority that governs the creation and restricts the use of the fund. If that authority creates use restrictions that cannot be amended by the General Assembly, the custodial fund is not eligible for investment in non-interest bearing warrants.
Alternatively, if the General Assembly has the legal power to amend the authority for the particular custodial fund, the custodial fund is eligible for investment in non-interest bearing warrants upon the amendment of that authority to transform the custodial fund to public funds.
Question No. 2: Does the term "public funds" as used in § 24-75-206, C.R.S. (2002), include custodial funds?
Answer No. 2: Please see the response to Question No. 1. Whether a custodial fund is a "public fund" available for investment in non-interest bearing warrrants depends upon the power of the General Assembly to amend the authority governing the particular fund. If the General
Assembly is empowered to amend the authority that restricts the use of a particular fund, that fund is a "public fund" within the meaning of § 24-75-206, C.R.S. (2002).
Question No. 3: Are there categories of funds (other than those noted in the constitution) that due to their nature or the form of statutory language used to create them to which § 24-75-208, C.R.S. (2002), does not apply?
Answer No. 3: Yes. Categories of funds to which § 24-75-208, C.R.S. (2002) likely does not apply — in addition to funds created by the Colorado Constitution — include federal grants, collections of monies by Colorado for another government, settlement proceeds from lawsuits, contributions to specific funds for the benefit of those who made the contributions or for the benefit of specific designated beneficiaries, or trust funds donated by third parties for a specific purpose. Again, whether a specific fund within these categories falls outside § 24-75-208, C.R.S. (2002) requires a detailed examination of the authority for the fund.
Discussion
The Colorado General Assembly has enacted a series of statutes that provide for improved management of public funds in the custody of Colorado's Treasurer. A provision within these fiscal management statutes allows the Treasurer to invest "public funds" in non-interest bearing general fund warrants. This opinion addresses whether custodial funds held in Colorado's treasury are eligible for this type of investment.
The reasons for the fiscal management statues are described in §24-75-206, C.R.S. (2002):
 Legislative declaration. The general assembly hereby determines and declares that it intends by sections 24-75-206 to 24-75-210 to improve the system of management of the public funds in the custody of the state treasurer to enable the state of Colorado promptly to make disbursements of legally appropriated monies prior to and in anticipation of receipts of the general revenue funds.
Section 24-75-208 then provides for short term investment of funds on hand. It says:
 Investment of treasury funds. It is lawful for the state treasurer and it is the state treasurer's duty, whenever there are funds on hand or in the state treasurer's custody or possession eligible for investment, to invest in noninterest bearing general fund warrants issued against the general fund at a time when moneys accruing to the fund have not been received or credited to the general fund, but such warrants shall be drawn pursuant to appropriation made by the general assembly, and the controller shall first certify that appropriations do not exceed estimated general fund revenues and surplus.
In the circumstances described, § 208 allows the Treasurer to invest the "public funds" described in § 206 in non-interest bearing general fund warrants to pay obligations of the state in anticipation of revenue to be received by the general fund.
The Treasurer has asked several questions that address whether certain monies held in Colorado's treasury, called custodial funds, are "public funds" within the meaning of the provisions just quoted. If the custodial funds are public funds, in appropriate circumstances they can be invested in non-interest bearing general fund warrants. If the custodial funds are not public funds, they cannot be invested under these statutes. The legal distinction between public funds and custodial funds is therefore the key to answering the questions posed by the Treasurer.
"Public funds" are monies that are "creditable to the general revenue of the state" and are not "designated for purposes other than such general revenue." Stong v. Industrial Commission, 204 P. 892 (1922). The State Treasurer is the custodian of Colorado's public funds. Id.; Colo. Const., Art. X, § XII. Money collected by the General Assembly to defray the general costs of government services are public funds. For example, tax revenues are public funds. Colorado General Assembly v. Lamm, 700 P.2d 508 (Colo. 1995).
In contrast, true "custodial funds" are monies held in Colorado's Treasury for the benefit of a particular person or group. The Colorado Supreme Court has defined custodial funds as:
 funds received by the state that are "custodial" in nature — funds not generated by tax revenues which are given to the state for particular purposes and of which the state is a custodian or trustee to carry out the purposes for which the sums have been provided.
Colorado General Assembly v. Lamm, 700 P.2d 508, 524 (Colo. 1985) (citing Pensioners Protective Association v. Davis, 112 Colo. 535, 150 P.2d 974
(1944)). The Attorney General previously gave the following description:
 Central to the concept of custodial funds is a requirement that the state's role must be that of a guardian of such funds rather than the outright owner.
Formal Attorney General Opinion 91-1 (March 11, 1991). Because the state acts as a guardian or trustee, custodial funds are beyond the power of the Legislature to appropriate. Colorado General Assembly v. Lamm,700 P.2d at 525.
The General Assembly has codified these concepts in a recent statute. It describes custodial funds of the Attorney General in part as follows:
 (3) If all or a portion of any moneys received . . . are custodial moneys, [they shall be placed] in a separate account. Any custodial moneys placed in a separate account pursuant to this subsection (3) shall not be subject to annual appropriation by the general assembly.
 . . . Any custodial moneys placed in a separate account pursuant to this subsection (3) shall be expended only for the purposes for which the moneys have been provided. . . .
 (4)(a) As used in this section, unless the context otherwise requires, "custodial moneys" means moneys received by the attorney general:
 (I) That originated from a source other than the state of Colorado;
 (II) That are awarded or otherwise provided to the state for a particular purpose;
 (III) For which the state is acting as a custodian or trustee to carry out the particular purpose for which the moneys have been provided.
§§ 24-31-108(3) and (4), C.R.S. (2002).
In sum, custodial funds have several important characteristics. They originate from a source other than the taxpayers of Colorado generally. They are provided to the state for a particular, identified purpose. The state acts as a custodian or trustee for the money, and in order to carry out the particular purposes for which the money has been provided. Finally, the monies in custodial funds are beyond the power of the General Assembly to appropriate. They therefore are not "public funds" of the State available for investment under §§ 24-75-206 and 208.
The Colorado Supreme Court has described several categories of custodial funds held in the Colorado Treasury. The first category consists of funds that the constitution designates for a special purpose. For example, in Pensioners Protective Association v. Davis,150 P.2d 974 (Colo. 1943), the Court held that the Old Age Pension fund was custodial. The Court stated:
 Here . . . there is a fund, wholly special, and of constitutional origin. It is administered by a board, statutorially [sic] denominated as `trustee' thereof, in which relation, as we held in the Davis case, it is subject to judicial control and direction. The fund is not dependent upon legislative appropriation. The state, in its sovereign capacity, has, and can have, no interest therein. No relief against the state, as such, was sought originally, nor does the petition under consideration involve spoliation of the sovereign or inroads in, or forays, on, any state fund. The moneys involved are not public funds. They stand segregated for a special and designated use.
Another category consists of court-approved settlement payments to the state designated for a specific purpose. In Colorado General Assembly v. Lamm, 700 P.2d 508 (Colo. 1985), Chevron paid money to the state as the result of a consent order resolving federal administrative and judicial proceedings. However, the money was only available to the states if they agreed to spend it on specified programs. The Court noted that the Department of Energy and Chevron retained ultimate authority to approve any use of the funds proposed by the states. Id. at 525. At issue in Lamm was whether the Governor or the General Assembly could exercise control over the funds. The Court found that:
 The money, whether deemed from a private source because disbursed from the coffers of a private corporation or from a federal source because approved by a federal administrative authority, was required to be used for a purpose approved ultimately by non-Colorado authorities. . . . [T]he role of the state in administering the fund, as determined by the external source generating the revenue, was essentially custodial in nature. Id.
Therefore, the Court held that the Governor's exercise of authority over the fund did not invade the General Assembly's right to appropriate public funds. Id.
Federal grants may also be custodial funds. In Colorado General Assembly v. Lamm, 738 P.2d 1156 (Colo. 1987), the Court extensively discussed the features of various federal block grants. When federal statutes "specify the purposes the state is directed to accomplish with the money, the manner in which the purposes are to be accomplished and the restrictions placed on use of the funds by the federal government," such grants are custodial and not subject to the General Assembly's appropriation power. Id. at 1173. This decision followed the earlier ruling in McManus v. Love, 499 P.2d 609 (1972), where the Court held that the legislature had no power to appropriate federal funds received by the executive branch "directly from agencies of the federal government and unconnected with any state appropriations." Id. at 610.
However, federal grants which require matching state funds are subject to legislative appropriation. In Anderson v. Lamm, 579 P.2d 620 (1978), the Court considered the constitutionality of the Governor's veto of a headnote in the Long Appropriations Bill involving federal funds. The Anderson Court found that the headnotes conditioned only the appropriation of state, not federal. Therefore, the legislature has the power to condition the amount of state expenditures. Id. at 625-26.
A final category of custodial funds consists of funds collected on behalf of and for the use of another. One example would be the state's collection and distribution of county and municipal sales and use taxes. § 29-2-106(3)(a), C.R.S. The state also collects and distributes the Regional Transportation District sales tax. The Legislature has defined "collections for another government" to include taxes collected by the state for "the benefit and use" of another government and that are "passed through to the government for whose use such revenues were collected." § 24-77-102(13), C.R.S. (implementing the Taxpayer Bill of Rights). Thus, the state has no ownership of these funds it collects for local government. The custodial nature of these funds is further demonstrated by the fact that cities, counties and the RTD may pledge their sales taxes in advance of receipt. §§ 29-2-111 and 32-9-131, C.R.S The local governments may exercise the ownership decision of borrowing against their funds, while the role of the state is ministerial in nature to collect and distribute the funds.
Conclusion
Custodial funds are not public funds within the meaning of §24-75-206, C.R.S. (2002), and therefore, are not available for investment in non-interest bearing warrants. A custodial fund is one in which the role of the state is one of guardian rather than owner and where the General Assembly does not have the power of appropriation. Determination of whether a particular fund is custodial and not available for investment in non-interest bearing warrants requires the Treasurer to review the facts, laws and contracts that establish the particular fund.
Issued this 17th day of April, 2003.
KEN SALAZAR Colorado Attorney General
RENNY FAGAN Deputy Attorney General for State Services
STEVE SMITH Assistant Attorney General