[No. 1576, July 25, 1913.]

STATE OF NEW MEXICO, ex rel., THOMAS P. DELGADO, Appellee, v. W. G. SARGENT, State Auditor, Appellant.

## SYLLABUS (BY THE COURT)

1. Chap. 135, Laws of 1909, interpreted and held, that the appropriations carried by that Act were limited to the insurance monies mentioned in the title.

P. 135

2. Under sec. 21, of chap. 83, Laws of 1912, only the surplus monies in the Insurance fund, over and above the amounts required to meet the appropriations under chapter 135, Laws 1909, were diverted to the State Salary fund.

P. 136

3. The last paragraph of sec. 18, chapter 83, Laws 1912, held to be void as violative of section 16 of article IV of the Constitution, which prohibits general legislation in appropriation bills.

P. 138

Appeal from the District Court of Santa Fe County; Edmund C. Abbott, District Judge; affirmed.

FRANK W. CLANCY, Attorney General, Santa Fe, N. M., for appellant.

Did the legislature of 1912 put the money, specified in chapter 135, Laws 1909, beyond the control of the auditor and treasurer so far as the continuance of payments is concerned? Laws 1905, ch. 5; Laws 1909, ch. 135; Const., art. IV, sec. 30; Session Laws 1912, ch. 83.

WILSON, BOWMAN & DUNLAVY, Santa Fe, N. M., for appellee.

Construction of statutes. Laws 1912, ch. 83; Laws 1909, ch. 135; Laws 1905, ch. 6; Laws 1887, ch. 47; Laws 1899, ch. 91; Laws 1897, ch. 37; C. L. 1897, secs. 1762-1764a; Laws 1897, ch. 38.

Repeals by implication not favored in law. McAfee v. Southern R. R. Co., 36 Miss. 669; People v. Burtleson, 14 Utah 258, 47 Pac. 87; In re Booth's will, (Ore.) 66 Pac. 710.

Title of an act cannot be resorted to in aid of its construction where the act is free from doubt or ambiguity. Cornell v. Coyne, 192 U. S. 418, 48 S. Ed. 54; Pickering v. Arrick, 9 Mackey 169.

Legislating, not appropriating, receipts of Corporation Commission into General Appropriation bill violates Constitution. Const., art. IV, sec. 16; State v. Marron, 128 Pac. 485; In the matter of Appropriation Bill, 14 Fla. 283; Commonwealth v. Gregg, 161 Pa. 586, 29 Atl. 297;

State v. Cornell, 60 Neb. 276; In re House-bill No. 168, (Colo.) 39 Pac. 1096.

Legislature intended that all charges and appropriations be paid, before covering surplus of Insurance fund into Salary fund. Laws 1912, ch. 38, sec. 21; Peoples Fire Ins. Co. v. Lewis Parker, Rec., 35 N. J. L. (6 Vroon) 575; Laws 1909, ch. 85; People ex rel. Swigert, 107 Ill. 494; State ex rel. Bailey v. Cook, 36 Pac. 177, (Mont.) ; People v. Pacheco, 29 Cal. 210; People v. Needles, 96 Ill. 577; Trustee of Fund v. Roome, 93 N. Y. 313; Cutting v. Taylor, 3 D. 11, 51 N. W. 949, 15 L. R. A. 691.

## OPINION OF THE COURT.

PARKER, J.—This is an action brought by the State on the relation of Thomas P. Delgado, as treasurer of the fire department of the City of Santa Fe, against William G. Sargent, Auditor of the State, to compel the payment of the sum of $1200.00 to relator as such treasurer. The respondent answered the alternative writ and alleged as cause for his refusal to issue his warrant for said sum, that there were no funds available for the payment of such warrant by reason of the fact that the legislature of 1912 had diverted the fund into the state salary fund. The District Court awarded a peremptory writ and the State Auditor appealed to this Court.

It appears that in 1897 the legislature provided that there should be collected from all foreign insurance companies two per cent. of the amount of all premiums collected by them within any city, town or village in the Territory, which said sum should be paid to the fire depaartments of the city, town or village in which said premiums were collected. See chapter 38, laws of 1897, compiled as section 2132, C. L. 1897.

In 1905 the legislature created the Insurance department of the Territory, provided for a Superintendent of Insurance, and provided that all insurance companies should pay to the Superintendent of Insurance, two per cent. upon the gross amount of premiums received during each year. This act provided that these monies should be

paid into the Territorial treasury for an insurance fund and provided that the Territorial treasurer should annually, on the first day of August of each year, pay to the treasurer of the fire department of every city, town or village in the Territory a sum of money equal to the amount received by such fire department under section 2132, C. L. 1897, during the year 1904.

See chapter 5, laws of 1905.

The law remained in this form until 1909, when the legislature enacted chapter 135 of the laws of 1909, which is entitled "An act for the disposition of certain insurance money." Section 1 of that act provides for the payment of $2000.00 per annum "from the amount of money collected from the insurance companies, as defined in the act known as chapter 5, Session Laws of 1905 ,of New Mexico," to "the New Mexico Association of Firemen." Section 2 of the act omitted special reference to the insurance fund created by the act of 1905, but made an annual and continuing appropriation of specific amounts to the various fire departments of the Territory, including Santa Fe. The law remained in this condition until the session of the state legislature in 1912, when, by chapter 83 of the laws of that session, the same being the General Appropriation Bill, the legislature passed two provisions which relate to the subject in hand. The first is the last paragraph of section 18 of that chapter, and is as follows:

"All receipts of the State Corporation Commission, including all receipts of the Insurance Department of the State, shall hereafter be covered into the State Salary fund."

Section 21 of that chapter provides:

"The State Auditor is hereby directed to transfer to the State Salary fund all surplus monies in the following funds, to-wit: Insurance Fund," and ten other funds therein mentioned.

In pursuance of these two provisions the Auditor transferred all of the funds in the Insurance fund to the State Salary fund and hence answered that there were no funds available upon which he could issue his warrant.

The first proposition involved is the construction of chapter 135 of the laws of 1909. It is argued by appellant that, taking into consideration the title of this act and its provisions, the legislative intent is made to appear to limit the appropriation to the various fire departments in the Territory to monies contained in the Insurance fund. Counsel for appellee argued that by reason of the terms of section 2 of that act, which makes no reference to the Insurance fund whatever, it necessarily appears that the legislative intent was to make a general appropriation out of any public funds not otherwise appropriated. He cites authority to the effect that the title of an act can not be resorted to in aid of its construction where the act is free from doubt or ambiguity.

About the general principle relied upon there can be no controversy. But in this case an ambiguity arises out of the divergence of the literal terms of section 2 of the act from the scope of the title. If the legislative intent to make a general appropriation to the fire departments out of any money in the treasury not otherwise appropriated, had been clearly expressed in terms, the appropriation would, no doubt, control, notwithstanding the limitation in the title. To construe section 2 of the act as a general appropriation would be to ignore the title of the act, but to construe the act as limited to the insurance money is to give due effect to all of its provisions, a result always to be sought when possible. That resort to the title in aid of its interpretation is competent under circumstances like the present. See, 2 Lewis' Suth. Stat. Construction, sec. 339; 36 Cyc. 1133; Holy Trinity Church v. United States, 143 U. S. 457.

Another consideration of importance is the history of the legislation in behalf of the volunteer fire departments. No general appropriations for their support have ever been made. Their support has always been derived from monies collected from the fire insurance companies, upon the theory, we assume, that the insurance companies derive most of the real benefit from the existence and maintenance of the fire departments, and that they should, con-

sequently, assume the cost of their maintenance. So radical a departure from a former uniform practice as to make general appropriations for the purpose would certainly be clearly and unequivocally expressed, had the legislature so intended. We conclude that the appropriation was limited to the insurance monies.

From the above conclusion it follows that the argument of appellee that section 2 of the act of 1909 was a general appropriation out of any available fund, fails.

2 The question then arises as to whether the state legislature of 1912 has disposed of the Insurance fund so that it is no longer available to meet the appropriations of the act of 1909. It is to be observed that only *surplus* monies in the Insurance fund are to be transferred under section 21, to the Salary fund. That section undertakes to deal with funds already collected and in the treasury, and directs a single act of transfer of the funds. The solution of the question turns upon a proper interpretation of the word "surplus" as used in the act. It is to be remembered that these monies had been collected from the insurance companies for the express purpose of satisfying the annual appropriations made by the act of 1909 to the fire departments. Without such use of the monies no justification for the collection of the fund can be found. While it may be true that the legislature might divert the fund, its intention so to do, in view of the circumstances, can be expressed only in clear terms. Had the legislature intended to divert the entire fund it would seem that it would have employed the plain and simple language which would direct the Auditor to transfer all the monies in the fund to the Salary fund. If only surplus monies were to be diverted, then the legislature recognized that certain charges existed by law upon the fund. If legal charges upon the fund existed, then what charges? Certainly those charges fixed by law as much as any charges authorized to be made on the fund for expenses of administration or the like. We conclude, therefore, that the legislature did not divert the monies in the fund necessary to meet the appropriations existing against the same, and

that the State Auditor was in error in transferring to the Salary fund the amount necessary to pay the appropriation to the fire departments.

Very little precedent is to be found directly in point. In State v. Board of Commissioners, 94 Pac. 1004, there was a constitutional prohibition against a collection of monies by taxation for one purpose, and expenditure of the same for any other purpose, and the legislature of Kansas had authorized the expenditure of any surplus funds for the erection or repairing of court houses or county office buildings. In that case the court had occasion to define a surplus, and in so doing adopted Bouvier's definition as follows:

"That which is left from a fund which has been appropriated for a particular purpose; the remainder of a thing; the over-plus, the residue."

It is true in that case the court was not called upon to decide the question presented in this case, but the principles which we have announced were recognized by the court. The same proposition is touched upon in McConnel v. Allen, 105 N. Y. Supp. 16, but the case is of no particular value owing to the difference in the facts.

The Auditor justified his refusal to issue the warrant upon both sections of the act of 1912, above quoted. That act was approved by the Governor, June 14, 1912. Between that date and August 1st, when the appropriation of the act of 1909 became effective, monies were authorized to be collected by the Insurance department, and, presumably, were collected. The Auditor transferred both the monies already collected and on hand at the date of the passage of the act of 1912, and also the monies thereafter collected by the Insurance department. It therefore becomes necessary to pass upon the constitutionality of the last paragraph of section 18 of the act of 1912. Counsel for appellee argue that this paragraph antagonizes section 16 of article IV, of the Constiution, which prohibits general legislation in approopriation bills. That the paragraph is general legislation of a permanent character seems to be clear. It provides for a certain disposition of

monies collected by the Insurance department which disposition of the said monies is to continue indefinitely. It bears some relation to the appropriations made in the act out of the Salary fund, but it goes further and provides a permanent policy thereafter to be pursued which can bear no relation to the appropriations made in that act. Had the paragraph limited the transfer of the funds to that year and to meet the appropriations made in the act, a different proposition would be presented. In such case the paragraph might well be held to be germane to the appropriation act and allowable, under the doctrine announced in State v. Marron, 128 Pac. 485. But the permanent character of the provision takes it out of the doctrine of the Marron case and clearly renders it violative of the Constitution. We reach this conclusion with reluctance, it being always desirable to give effect to the acts of a co-ordinate branch of the government when possible.

For the reasons stated the judgment of the lower court will be affirmed, and it is so ordered.