279 P.2d 1042

STATE of New Mexico, ex rel. Bryan L. PRATER, R. J. Carter and Bernabe Romero, as members of the State Board of Barber Examiners, and Bryan L. Prater and R. J. Carter, Individually, Petitioners-Appellees,

v.

STATE BOARD OF FINANCE and Edwin L. Mechem, as Governor of the State of New Mexico and ex officio a Member of the State Board of Finance, Robert Castner, as State Auditor of the State of New Mexico and ex officio a Member of the State Board of Finance, and L. C. Wright, Guy Rogers, Fletcher Catron, M. P. Carr and Merrill B. Johns, Jr., as Members of the State Board of Finance, and R. H. Grissom, as State Treasurer of the State of New Mexico, Respondents-Appellants.

No. 5859.

Supreme Court of New Mexico.

Feb. 9, 1955.

Richard H. Robinson, Atty. Gen., C. C. McCulloh, Fred M. Standley, Asst. Attys. Gen., for appellants.

Watson, McIntosh & Watson, Santa Fe, for appellees.

COMPTON, Chief Justice.

This is a mandamus action by the State of New Mexico on relation of the State Board of Barber Examiners and certain members of its board individually against the State Board of Finance, to compel the Finance Board to grant relators a supplemental budget of $3,860, the balance remaining in the State Board of Barber Examiners' Fund, and from an adverse judgment, respondents appeal. While a supplemental budget is unopposed, respondent board justifies its refusal to grant an increase on the ground that it is prohibited from so doing by the 1953 General Appropriations Act. The question presented involves a construction of Sections 5 and 9, Chapter 156, Laws 1953, the General Appropriations Act; Section 21, Chapter 220, Laws 1937, the State Board of Barber Examiners' Act; and Section 16, Article 4 of the New Mexico Constitution, the pertinent provisions of which read:

"Section 5. For each of the forty-second and forty-third fiscal years, appropriations are made for each of the following boards from revenues provided therefor by law, subject to an annual budget for each board submitted to and approved by the State Board of Finance, *and provided that the State Board of Finance shall not increase any of the appropriations;* * * * Barber Examiners Board....$6,500.00 * * *." (Emphasis ours.)

"Section 9. All miscellaneous revenues are hereby appropriated as provided under existing laws * * *."

"Section 21. Finance. All monies received by the Board under this Act shall be paid to the Secretary of the Board, who shall give a proper receipt for the same, and shall, at the end of each month, report to the State Comptroller the total amount received by him under the provisions of this Act, from all sources, and shall at the time deposit the entire amount of such receipts with the State Treasurer, who shall place them to the credit of a

special fund to be created and known as the 'State Board of Barber Examiners' Fund.' The State Board shall by its President and Secretary, from time to time, certify to the Auditor of the State the necessary expenses incurred by said Board, including the salaries and the per diem of the members and the Auditor shall then issue his warrant for the same, which shall be paid out of the funds so established for the maintenance of said Board; Provided, that no order shall be drawn by State officials on any fund other than the above named fund for any salaries or expenses of the Board incident to the administration of this Act. All funds so paid to the Treasurer of the State shall remain and be a separate and permanent fund for the maintenance of the Board; Provided further, however, that at the close of each fiscal year any sum of money in said fund in excess of Five Hundred ($500.00) Dollars remaining after the payment of all expenses necessary to carry out the provisions of this Act, shall be set aside and placed to the credit of the Free Text Book Fund."

"Sec. 16. (Subject in title—Appropriations.) * * * General appropriation bills shall embrace nothing but appropriations for the expense of the executive, legislative and judiciary departments, interest, sinking fund, payments on the public debt, public schools, and other expenses required by existing laws; * * *. All other appropriations shall be made by separate bills."

During the forty-second fiscal year relators collected in fees, a total of $10,685. A proposed budget of $6,500 was submitted to and approved by the respondent board for the forty-second fiscal year which amount was exhausted in the administration of the Barbers' Board Act prior to the end of the forty-second fiscal year. Additional expenses were incurred by the board during the fiscal year in the examination of various applicants to engage in barbering and in the inspection of new barber shops, etc. The supplemental budget request of $3,860 was made to defray such additional expenses.

Relators say that Section 21 of the Barbers' Act is a continuing appropriation to the board of all fees, and that Section 5 of the 1953 Appropriations Act is permanent legislation in that it amends Section 21, and by reason thereof offends the constitution which prohibits general legislation in appropriation bills. This contention must be rejected. Section 5 does not amend the Barbers' Board Act. It merely supersedes, as a temporary expe-

dient, the appropriation contained in the Act for the biennium mentioned. State ex rel. Peck v. Velarde, 39 N.M. 179, 43 P.2d 377; State ex rel. Whittier v. Safford, 28 N.M. 531, 214 P. 759; State ex rel. Lucero v. Marron, 17 N.M. 304, 128 P. 485; State ex rel. Delgado v. Sargent, 18 N.M. 131, 134 P. 218. Nevertheless, certain language in last paragraph of Section 5 does contravene constitutional inhibitions, though so holding does not invalidate the whole section. It reads:

"All balances remaining to the credit of any above named boards shall revert to the general fund at the end of *any* fiscal year." (Emphasis ours.)

In so far as this language attempts to speak for disposition of balances remaining with the boards intended beyond the biennium (and that is what on its face such language obviously attempts to do) it amounts to general legislation and is within the interdiction of Const. Art. 4, § 16, as held in State ex rel. Delgado v. Sargent, supra. Otherwise, in our opinion, Section 5 does not necessarily contravene the constitutional provision mentioned, either as an amendment of Section 21 of L.1937, Ch. 220, known as the Barbers' Board Act; or, as further contended by counsel for relators, by converting said Act from a measure representing reasonable exercise of the police power in a regulatory act, into revenue-producing legislation in a general appropriation bill in contravention of Const. Art. 4, § 16, about which more is said later.

It is further contended by relators that certain language in Section 9 of the 1953 Appropriations Act, "all miscellaneous revenues are hereby appropriated as provided under existing laws", means an appropriation of all fees to the board in addition to the appropriation in Section 5 of the Act. This provision does not bear such construction. Section 9 simply appropriates all unexpended monies to the general fund to meet the General Appropriations Act, except such revenues as were previously appropriated for specific purposes.

It is lastly argued that the transfer of surplus funds belonging to the Barbers' Board to the General Fund, converted the Barbers' Act from a regulatory to a revenue raising act, and thereby antagonizes Section 16, Article 4 of the New Mexico Constitution. We find no merit to this argument. Such surpluses are germane to general appropriation acts and incidental thereto, and the transfer did not alter its regulatory character. Arnold v. Board of Barber Examiners, 45 N.M. 57, 109 P.2d 779; Tharp v. City of Clovis, 34 N.M. 161, 279 P. 69. What a general appropriation act may properly include was discussed in State ex rel. Lucero v. Marron, supra [17 N.M. 304, 128 P. 489], and the court there held:

"* * * If the constitutional provision is to be literally construed, this authority to use the surplus of other funds or to borrow money would be void. Similar provisions, or provisions which would likewise be objectionable in such an act, under this construction, are to be found in sections 2, 5, 6, 12, 13, 14, 18, 21, 25, and other sections not necessary to enumerate, and if the construction contended for could be sustained, then separate acts, covering each of these incidental matters, would necessarily be required, making legislation cumbersome in the extreme, and requiring endless detail work on the part of the lawmakers, which we cannot believe was contemplated by the framers of the Constitution. What vice or evil can there be in making provisions in such an act, which are incidental to the main fact of the appropriation? The limitation was imposed upon the main act of the appropriation, and not the matters of detail connected with such appropriation. Numerous states have provisions similar to that contained in the first part of section 16, supra, which require the subject of every bill to be clearly expressed in its title, and that no bill embracing more than one subject shall be passed, etc., and the courts all uniformly hold that any matter germane to the subject expressed in the title of a bill and naturally related to it is valid. When an appropriation is made, why should not there be included with such appropriation matter germane thereto and directly connected with it, such as provisions for the expenditure and accounting for the money, and the means and methods of raising it, whether it be by taxation, or by some other method? What valid objection can be interposed to such a course, so long as the Legislature confines the incidental provisions to the main fact of the appropriation, and does not attempt to incorporate in such act general legislation, not necessarily or directly connected with the appropriation legally made, under the restrictions of the section in question?"

In City of Chicago v. R. & X. Restaurant, 369 Ill. 65, 15 N.E.2d 725, 728, 117 A.L.R. 1313, in discussing this question, the court said:

"* * * Under the police power license fees may not be imposed wholly for the purpose of obtaining revenue, * * * but a license fee which will legitimately assist in the regulation of the business may be exacted, and it is not essential that it be confined to the exact expense of issuing a license and regulating and inspecting the business. * * *"

We find support for our conclusion from a consideration of the various general ap-

propriation acts, commencing with 1937. For 1937 and 1938 the expenses of the board were limited solely to the fees collected during that biennium. For subsequent years expenditures were limited to fixed amounts. Further, Section 18 of the 1953 Appropriations Act specifically provides that "no funds shall be allocated * * * to any * * * board * * * for which no appropriation has been made by the *Twenty-First Legislature.*" This language excludes any implication that Section 21 of the Barbers' Board Act constitutes a continuing appropriation of all fees to the board, the expenditure of which is unlimited by the 1953 Appropriations Act.

In upholding this Act we must confess we have not done so without entertaining disturbing doubts at times touching its constitutionality. Relators' counsel have argued with great force that to sustain L. 1953, Ch. 156, § 5, as the same affects the Barbers' Board, is to convert the act creating it, L.1937, Ch. 220, into a revenue-producing measure, notwithstanding its enactment was upheld in Arnold v. Board of Barber Examiners, 45 N.M. 57, 109 P.2d 779, only when viewed as a reasonable exercise of the police power to promote the public health and welfare. They point out that 40 per cent of its funds are denied to it with the result that it is unable to carry on the inspections and otherwise perform the regulatory and supervisory duties imposed on it by the Act creating it.

They further show that the State Board of Finance in declining the second request for approval of budget revision to cover items of necessary expense for inspections, etc., after exhaustion of the $6,500 set up in the general appropriations bill, virtually expressed regret that its hands were tied. In the resolution denying approval the Board made it clear there was no question of discretion involved. The resolution contained a specific recital that the necessity for the revision requested had been established to the satisfaction of the Board and that it was its considered opinion that the request should be granted, if only it had the legal authority to do so. However, it was faced with the restrictive language of L.1953, Ch. 156, § 5, reading, "provided that the State Board of Finance shall not increase any of the appropriations", budgeted in said section.

There can be no question that but for the restraining influence of Const. Art. 4, § 16, or like provisions in the Constitution or laws of sister states, the appropriation on which administrative boards such as the Barbers' Board depend for existence and operation could be so reduced in a general appropriations bill as to put it out of business as effectively as if repealed. If it has this effect, it violates this

constitutional proviso. See Daugherty v. Riley, 1 Cal.2d 298, 34 P.2d 1005.

Of course, no one doubts the power of the legislature, if it so wills, to repeal outright the Act creating any of these administrative boards. But, then, the matter is out in the open and it must be done by an act whose title states its subject with opportunity on the part of those opposing such action to make their wishes known. To secure them this right is one of the very purposes of such a constitutional provision as ours as stated in State ex rel. Lucero v. Marron, supra; State ex rel. Delgado v. Sargent, supra; and other cases cited above.

Indeed, if it so chose, the legislature could order the fees collected for administering these various boards paid into the general fund in the first instance and then pay the cost of administering same from that fund. As said in Gulf Ins. Co. v. James, 143 Tex. 424, 185 S.W.2d 966, 971, a case much like the present:

"We are also of the opinion that the petitioners have no such vested interest in such funds as would authorize them to enjoin the use of the funds for general purposes. *If it should be conceded for the sake of the discussion that the special funds here under consideration were levied under the police power, and only for the purpose of supervising the insurance business, the balances remaining on hand unexpended for supervisory purposes at the end of the year, or at the end of the biennium for which they were levied, could be used for general purposes.* A special tax in an amount reasonably necessary may be levied on those conducting a particular business, for the purpose of raising funds to supervise the operation of such business. City of Fort Worth v. Gulf Refining Co., 125 Tex. 512, 83 S.W.2d 610; Great Northern Railway Co. v. Washington, 300 U.S. 154, 57 S.Ct. 397, 400, 81 L.Ed. 573. Such tax is prima facie valid and reasonable, and as said in Great Northern Railway Co. v. Washington, supra, 'The State is not bound to adjust the charge after the fact, but may, in anticipation, fix what the legislature deems to be a fair fee for the expected service, the presumption being that if, in practice, the sum charged appears inordinate the legislative body will reduce it in the light of experience.' It is impossible to levy the exact amount needed for such supervision, and it is likewise impossible to determine the exact amount actually expended for that purpose. This is so because the cost of maintaining the judiciary, the Attorney General's department, and the other departments of government—all

of which aid more or less in the supervision of the business—are paid out of the General Revenue Fund, and if a strict accounting were made, the State would be entitled to recoup the amount expended for this purpose from the special fund. Consequently, it cannot be said that more has been received by the State for this special purpose than has been expended therefor. City of Fort Worth v. Gulf Refining Co., 125 Tex. 512, 83 S.W.2d 610. The State could have required the funds collected for the purposes indicated to be paid directly to the General Revenue Fund in the first instance. Ex Parte Gregory, 20 Tex.App. 210, 219, 54 Am.Rep. 516; Brown v. City of Galveston, 97 Tex. 1, 17, 75 S.W. 488. If it had done so, then certainly the excess, if any, would have been available for use for general purposes. *The propriety and fairness of an enactment authorizing the use of the unexpended balances in these special funds for general purposes present legislative rather than judicial considerations.* Consequently, the State now has the right, if the Legislature deems it wise to pass suitable laws authorizing it, to use the balances of these special funds for general purposes. Section 1 of the Act, which authorized the transfer of Operator's and Chauffeur's License Fund to the General Revenue Fund, is therefore valid." (Emphasis ours.)

Thus it is that the power of the legislature to do what it has done with the excess funds of the Barbers' Board is not in question. The precise question is whether it has proceeded in the right way to accomplish its purpose in the light of the limitations contained in Const. Art. 4, § 16. We are not satisfied to that high degree of conviction applicable before striking down a statute on constitutional grounds. State ex rel. Lucero v. Marron, supra, that the legislature exceeded its powers in enacting L.1953, Ch. 156, § 5. It may have underestimated the costs of administration of the board for the biennium in setting them at the figure it did and the evidence is pretty strong that it did. If so, the only relief for the remainder of the biennium would be a deficiency appropriation, a matter to be taken up with the legislature. It is not within our province to grant relief.

The judgment must be reversed with a direction to the trial court to enter an order discharging the writ previously issued, and it is so ordered.

LUJAN, SADLER, and McGHEE, JJ., concur.

KIKER, J., not participating.