759 P.2d 1380

**STATE of New Mexico, ex rel. Max COLL and Ben D. Altamirano, Petitioners,**

v.

**Hon. Garrey CARRUTHERS, Governor of the State of New Mexico, and Willard Lewis, Secretary of the Department of Finance and Administration of the State of New Mexico, Respondents.**

No. 17587.

Supreme Court of New Mexico.

Aug. 2, 1988.

Carpenter & Goldberg, Joseph Goldberg, David J. Stout, Albuquerque, for petitioners.

Campbell and Black, Jack M. Campbell, Michael B. Campbell, Bradford B. Berge, John H. Bemis, Alex Valdez, Gen. Counsel Office of the Governor, Sp. Asst. Atty. Gen., Ted Apodaca, Gen. Counsel Dept. of Finance & Admin., Sp. Asst. Atty. Gen., Santa Fe, for respondents and real parties in interest.

## OPINION

PER CURIAM.

The Chairman of the New Mexico House Appropriations and Finance Committee, Max Coll, and the Chairman of the New Mexico Senate Finance Committee, Ben Altamirano, petitioned the Supreme Court for a writ of mandamus directing Governor Garry Carruthers and Secretary of Finance

and Administration, Willard Lewis, to perform their respective duties and administer the General Appropriation Act of 1988 (General Appropriation Act) as originally passed without reference to various "line-item" vetoes made by the Governor.

The General Appropriation Act was duly passed in the New Mexico State Senate and House of Representatives during the 1988 legislative session. The Act was then sent to Governor Carruthers for his approval or veto. Governor Carruthers sent back a message with several portions that were vetoed by him. Coll and Altamirano challenge the Governor's vetoes on the grounds they employ the partial veto power allowed by the New Mexico Constitution article IV, section 22 to illegally create new legislation or appropriations, distort legislative intent, and create legislation inconsistent with that enacted by the legislature by selectively striking words, phrases, clauses, or sentences.

At a hearing on the petition, and with the agreement of counsel, we held that with respect to the vetoes contained in subparagraphs D, E, and H of paragraph VII, the petition was denied. An alternative writ of mandamus issued with respect to the remaining vetoes which we now consider. We hold that all of the remaining vetoes, with the exception of Item B, are valid.[1]

The separation of powers doctrine, as embodied in the New Mexico Constitution, states:

The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.

N.M. Const. art. III, § 1.

The legislative power of New Mexico is vested in the Senate and House of Repre-

1. The letters used in this opinion refer to lettered items in the petition and correspond to items in the General Appropriation Bill.

sentatives which are designated as the legislature. N.M. Const. art. IV, § 1. With few exceptions, money shall be paid out of the public treasury only upon appropriations made by the legislature. "Every law making an appropriation shall distinctly specify the sum appropriated and the object to which it is to be applied." N.M. Const. art. IV, § 30. The Constitution of New Mexico does not define, describe, or limit the contents of a general appropriation bill. However, the constitution to the extent here material has expressed the condition that "[g]eneral appropriation bills shall embrace nothing but appropriations for the expense of the executive, legislative and judiciary departments.... All other appropriations shall by made by separate bills." N.M. Const. art. IV, § 16.

■ The governor of New Mexico is the state's chief executive officer and has constitutional powers conferred upon him including veto power as set forth in article IV, section 22. Although the governor has no authority to appropriate money, he does have the power to exercise a partial veto where appropriations are concerned: "The governor may in like manner approve or disapprove any part or parts, item or items, of any bill appropriating money, and such parts or items approved shall become a law, and such as are disapproved shall be void unless passed over his veto, as herein provided." N.M. Const. art. IV, § 22. This power of partial veto is only a negative power to disapprove; it is not the power to enact or create new legislation by selective deletions. *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 365, 524 P.2d 975, 981 (1974).

■ The judicial branch is constitutionally empowered to resolve conflicts between the legislative and executive branches when brought before the Supreme Court by a petition for writ of mandamus. N.M. Const. art. VI, § 3. Furthermore, the court has the authority to review the Governor's vetoes under a theory of checks and balances. The Supreme Court of New Mexico recognizes that

[t]he power of veto, like all powers constitutionally conferred upon a governmental officer or agency, is not absolute and may not be exercised without any restraint or limitation whatsoever. The very concept of such absolute and unrestrained power is inconsistent with the concept of 'checks and balances,' which is basic to the form and structure of State government created by the people of New Mexico in their constitution, and is inconsistent with the fundamental principle that under our system of government no man is completely above the law.

*Sego*, 86 N.M. at 362, 524 P.2d at 978. (citation omitted).

Many state constitutions give the chief executive item-veto powers. The major factors which prompted drafting of constitutions to include the item-veto were: To prevent corruption, to prevent hasty and ill-conceived legislation, and most importantly, to prevent "logrolling" tactics by the legislature. *Colorado Gen. Assembly v. Lamm*, 704 P.2d 1371, 1383 (Colo.1985). Before the item-veto was incorporated into constitutions, a common practice of legislators was to include riders which were controversial or did not have adequate support to be passed on their own in general legislation. *Id.* A governor was then forced to veto the entire appropriation act in order to prevent the one objectionable portion from becoming law. To counter that effect governors were given the item-veto power. *Id.* New Mexico differs from most other states with item-veto provisions because it allows the broadest possible veto authority by additionally providing authority to veto "parts", not only "items".

■ We recognize that the normal course of action for the legislature to pursue in response to an executive veto is to attempt an override. N.M. Const. art. IV, § 22. Nevertheless, it is not the only recourse and, as we carefully explained in *Sego*, mandamus is a proper procedure "to test the constitutionality of vetoes or attempted vetoes by the governor." 86 N.M. at 363, 524 P.2d at 979. As was noted in *Colorado Gen. Assembly*, 704 P.2d at 1377, "the delicate constitutional balance between the executive and the legislative branches of government" would be upset if

we were to hold that the legislature may not challenge a gubernatorial veto until it has attempted by a two-thirds vote to enact a law which it initially was authorized to accomplish by a simply majority. However, a veto override is no substitute for unsound legislative enactments.

■ The first legislative restriction on appropriated funds we consider is Item A, which reads: "Funds appropriated to the second judicial district attorney shall not be expended for rental of parking space." The governor vetoed this language with the following specific objection: "This language could result in state vehicles being parked in completely unsecured areas, susceptible to extensive damage, and is therefore vetoed." In exercising his veto power, the governor utilized the line-item veto authority of article IV, section 22 of the New Mexico Constitution.

In restricting the expenditure of funds appropriated to the office of district attorney, the legislature performs not merely an appropriation oversight function, but it attempts to make detailed, miniscule, inconsequential executive management decisions. In this instance, the legislature should have limited itself to addressing matters of "significant financial impact" such as those we specifically approved in *Sego*, 86 N.M. at 367, 524 P.2d at 983. Counsel for both parties noted that approximately $4,000 was earmarked for rental of parking space if the legislature had not attempted its restriction. The total appropriation to the second judicial district attorney was $4,500,000. By attempting to detail the district attorney's expenditure, the legislature intruded into the executive managerial function. Such intrusion is inappropriate under our constitutional form of government and comes into conflict with the separation of powers doctrine.

In *Anderson v. Lamm*, 195 Colo. 437, 442, 579 P.2d 620, 624 (1978), the Colorado legislature was specifically prohibited from attaching "conditions to a general appropriation bill which purport to reserve to the legislature powers of close supervision that are essentially executive in character." This statement of law agrees with our own

views on the subject. Although the facts before us are somewhat different than those in *Anderson*, we believe the proposition there stated provides persuasive authority for our position as well. In selecting a line which should not be crossed lest the legislature intrude on the executive managerial function, we realize our subjective evaluation of the facts underlies the principles and tests we espouse and rely upon. However, a line must be drawn. It appears to us the legislature has clearly crossed that line and trespassed into the executive domain.

■ The legislature's imposition of a limitation on the expenditure of funds for rental of parking space also falls into the category of general legislation. New Mexico Constitution article IV, section 16, specifically provides that "[g]eneral appropriation bills shall embrace nothing but appropriations...." *State ex rel. Delgado v. Sargent*, 18 N.M. 131, 137, 134 P. 218, 220 (1913). By including the condition that no money be expended on rental of parking space, the legislature has attempted to enact policy which is better addressed by general legislation and is not suitable for inclusion in the general appropriation bill. N.M. Const. art IV, § 16.

■ Petitioners next argue that the governor has, by vetoing the parking condition and keeping the appropriated funds, exercised his item-veto power in such a manner as to distort legislative intent and in effect to appropriate money by executive order for purposes unintended by the legislature. Petitioners claim the governor must veto not only the parking condition, but also the entire appropriation to the Office of the District Attorney in order for the veto to be effective. The petitioners consider both the condition and the appropriation to constitute a single "item of appropriation" as that term is used in article IV, section 22 of the New Mexico Constitution. Any change in legislation is a distortion of sorts. Article IV, section 22 prohibits only unreasonable changes.

We decline to adopt petitioners' argument that the total budget appropriation of $4,500,000 and the parking condition be

treated as an "item of appropriation" for veto purposes. Neither article IV, section 22 nor *Sego* requires that the entire appropriation be vetoed in order to delete the parking condition. The legislature may not artfully draft conditions or restrictions that would force the governor to veto an entire appropriation to a particular agency in order to reach a limitation or condition he finds constitutionally offensive. If this line of reasoning were followed the governor would be left with the option of either vetoing the entire appropriation of $4,500,000 or accepting the restriction. The restriction was not a proper restriction or condition and as such was subject to veto by the governor. The legislature left the governor no reasonable alternative. The veto was valid.

We next examine an attempt by the governor to veto a conditional appropriation to the district attorneys. The language in Item B which the governor vetoed provides as follows:

> None of the funds appropriated to the district attorneys shall be used to purchase automated data processing or word processing equipment until a system is reviewed by the department of finance and administration and by the legislative finance committee which has also been certified by the administrative office of the courts to be compatible with a statewide computer system that has been developed under the direction of the supreme court.

The governor stated as his reasoning for the veto:

> This language is vetoed because it violates the principle of separation of governmental powers. It does not constitute a reasonable condition on appropriated funds and exceeds the legislature's ability to regulate the use of funds during a period in which the legislature is not in session. Administration of appropriations is the function of the executive. Once an appropriation has been made the legislative prerogative ends and the executive responsibility begins.

■ We have consistently maintained that the "Legislature has the power to affix reasonable provisions, conditions or limitations upon appropriations and upon the expenditure of the funds appropriated." *Sego*, 86 N.M. at 366, 524 P.2d at 982; *State v. State Bd. of Fin.*, 69 N.M. 430, 367 P.2d 925 (1961); *State ex rel. L. v. Marron*, 17 N.M. 304, 128 P. 485 (1912). Only the legislature is authorized by the constitution to appropriate funds for the purchase of automated data processing equipment by the district attorney.

■ The governor argues that the imposition of conditions on the purchase of automation and data processing equipment unreasonably injects the legislature into the executive managerial function. The executive function does not commence until after administrative approval for the purchase of the equipment is first obtained from several state agencies. We are dealing with a condition precedent to the expenditure of appropriated funds, not with the details of managing the expenditure once approval is granted.

The vetoed language also requires the administrative office of the courts to certify that the automation system to be purchased by the district attorneys is "compatible" with a statewide computer system that has been developed under the direction of the supreme court. The governor argues that there is an absence of guidelines defining "compatible." We are not impressed with this argument. Verification of compatibility is easily ascertainable and is a commonly understood term to those familiar with computers. The governor also argues that the absence of standards and procedures for the certification process to be conducted by the administrative office of the courts is "unworkable" because there is presently no existing computer system. The absence of standards does not render the scheme "unworkable." It is obvious the legislature assumes that a statewide automation system will be developed by the administrative office of the courts before funds shall be used to purchase data processing equipment. Once the system has been established, standards for certification will follow as a matter of course. Clearly, the purpose of the condi-

tion is to provide an interlocking statewide system that will avoid expensive and extensive modifications by various state agency users in the future. It is not an unreasonable provision or condition.

■ The third legislative restriction vetoed by the governor, Item C, requires the Information Processing Bureau, General Services Department, to finance capital outlay expenses from internal services funds, and specifically prohibits using moneys from the equipment replacement fund to fund a statutory five-year funding scheme described in the Information Systems Act, NMSA 1978, §§ 15–1–1 to 15–1–13 (Repl.Pamp.1986). This restriction is in direct conflict with similar funding provisions in existing legislation. NMSA 1978, § 15–1–10(B) and (C) (Repl.1986). The vetoed language, if left unchallenged by the governor, would repeal by implication conflicting provisions in the Information Systems Act. Such limitation and repeal is more appropriately addressed in separate or general legislation. Article IV, section 16 of the New Mexico Constitution prohibits the inclusion of general legislation in the General Appropriation Act. The General Appropriation Act may not be used as a vehicle by which to nullify general legislation. The legislature is not free to override or repeal general legislation in this fashion. Since language seeking to accomplish this objective has been improperly included in the Act, it is subject to veto by the governor.

Coll and Altamirano also argue that this veto allows the Information Processing Bureau to "expend capital outlay funds from funds appropriated by the legislature in other categories." They argue that the Information Processing Bureau will be able to obtain money from the "equipment replacement fund" without their approval unless the restriction is upheld. We agree this result may follow; nevertheless, we uphold the governor's veto. The existing statutory scheme, the Information Systems Act, provides that changes in the five-year plan must be submitted and approved by the Information Systems Council. NMSA 1978, § 15–1–10(C) (Repl.Pamp.1986). The legislature has failed to follow its own mandate. Instead, it chose to reach funding objectives through the General Appropriation Act that conflict with existing provisions of general law. As we have noted, it is not free to pursue this course of action. The governor may strike general legislation in the appropriation bill.

■ Petitioners also object that the governor retained the $2,000,000 appropriation for capital outlay expenses, but struck only the limitations on the appropriation. We do not read *Sego* to require the entire item of appropriation, including the condition and the money, to be stricken in this instance because we are not dealing with a "proper" legislative condition. We find support for this proposition in *Henry v. Edwards*, 346 So.2d 153, 158 (La.1977), where it was held that "when the legislature inserts inappropriate provisions in a general appropriation bill, such provisions must be treated as 'items' for purposes of the Governor's item veto power over general appropriation bills." The governor's veto of this "item" is valid.

■ We next consider conditions placed upon the appropriation of funds for data processing services in Item F. The conditions are as follows:

There is also appropriated the sum of two million seven hundred twenty-two thousand nine hundred ninety-five dollars ($2,722,995) to administrative services division of the human services department to be matched with three million three hundred twenty-eight thousand one hundred five dollars ($3,328,105) in federal funding to be expended only for data processing services ~~to be purchased from the general services department for the ISD 2 system.~~

The language that has been lined-out was vetoed by the governor. He gave his reason for the veto in the following statement:

The Legislature lacks authority to appropriate federal funds or control the use thereof (*Sego v. Kirkpatrick*). In addition to the legal impediment, the practical consequence of this language is other necessary computer systems would not be funded. This language could

jeopardize current and future funding and therefore is vetoed.

The governor's main objection to the conditions imposed by Item F is that the legislature seeks to appropriate federal funds or "control the use thereof" by means of conditions or limitations imposed in the General Appropriation Act. We specifically rejected this attempt in *Sego*, 86 N.M. at 370, 524 P.2d at 986. But we also held that the legislature "has the power, and perhaps the duty, in appropriating State monies to consider the availability of Federal funds for certain purposes...." *Id.* 86 N.M. at 370, 524 P.2d at 986. In *Sego*, the legislature actually limited its appropriation only to those funds "matched" to federal funds.

■ The governor also objects, however, to the detailed nature of the oversight function which the legislature has assumed in the appropriation process in connection with the expenditure of funds for data processing services. He argues that such supervision violates article III of the New Mexico Constitution and justifies the use of his item-veto powers as to Item F. The Governor relies on the affidavit of Paul D. Stewart, Chief of the Automated Data Processing Bureau of the Administrative Services Division for Human Services Department. The affidavit attached to the pleadings have been considered by this Court without objection. Stewart says in the affidavit that if state funding of data processing services goes only to the ISD–2 system, there will be no funds available for operational support for several other programs which are not part of the ISD–2 program, including programs needed by the Office of the Human Services Department Secretary. We have previously observed in our discussion of Item A that conditions and restrictions on appropriations which reserve to the legislature "powers of close supervision" over the executive function are not looked upon with favor. *Anderson*, 579 P.2d at 624. In Item F, the legislature created the appropriation for data processing services, and limited the expenditure of appropriated funds to a specific system and a specific contractor. The executive management function has been largely swallowed up by the legislature. There remains no meaningful executive discretion to exercise. In addition, the legislature has eliminated funds for existing data processing services in the Office of the Secretary of Human Services Department, including the elimination of systems which provide the Secretary an automated general ledger and payroll. The governor's veto was valid. By upholding the veto, we leave intact the basic legislative oversight and appropriation function while assuring the executive a reasonable degree of freedom and discretion over the expenditure of appropriated funds. In this fashion, we seek to provide a balanced allocation of powers between the executive and legislative branch of government as contemplated in article III, section 1 of the New Mexico Constitution. For these reasons, we conclude the legislature overstepped its traditional oversight and appropriation functions when it used the appropriation process to name the General Services Department as the contracting party and the ISD–2 system as the system to be contracted for.

■ We next consider conditions placed upon the appropriation of funds for the Commodities Bureau in Item G. The conditions are as follows:

> It is the intent of the legislature that the appropriation of six hundred forty thousand dollars ($640,000) to the commodities support bureau shall not be expended to contract with a nongovernmental contractor for warehousing and delivery in the commodities support program.

That language was vetoed by the governor. His reason for the veto is explained in the following statement:

> This language is vetoed because it will result in the unnecessary expenditure of taxpayer dollars for storage and delivery of food commodities by the Human Service Department.

The basic purpose for this appropriation is to provide commodities to qualified recipients. Petitioners and respondent both agree that the condition imposed on the expenditure of funds here appropriated to the Commodities Bureau of the Human Services Department is intended to prevent

the Department from contracting with a nongovernmental contractor for warehousing and delivery of commodities. The condition hampers the governor's control over the expenditure of these funds to accomplish the purpose for which the funds were appropriated, a result we find unacceptable. The governor's veto "did not change the [basic] purpose for which the ... fund was established." *Sego*, 86 N.M. at 367–68, 524 P.2d at 983–84. The veto struck only the condition limiting the manner and means by which the commodities were to be delivered.

If we uphold the inclusion of legislation of a general nature in a general appropriation bill, the governor is denied his constitutional right to exercise his general veto power. We hold that the veto is valid.

■ Items I and J provide for cost-of-living increases for certain private employees of community based providers of mental health services as follows:

Included in the general fund appropriation to the developmental disabilities component of the community programs is six hundred ninety thousand five hundred dollars ($690,500) to stabilize the underfunded unit of service rates ~~including three hundred twenty-seven thousand five hundred dollars ($327,500) to provide a three and one-half percent cost of living increase for the community based providers' employees~~.

Included in the general fund appropriation to the mental health component of the community programs is three hundred fifty-eight thousand two hundred dollars ($358,200) ~~to provide a three and one-half percent cost of living increase for the community-based providers' employees~~.

The governor explained that for both items the language was vetoed because:

This language requires the Department to give a cost-of-living salary increase for the community-based providers' employees. These providers are independent contractors, paid through the Unit Price System. The Department has no control over the budgets of these contractors and thus cannot mandate a cost-of-living

increase and therefore the language is vetoed.

In these two items, the legislature appropriated money to the Health and Environment Department to be used to provide a cost-of-living increase to employees of mental health providers who contract with the Health and Environment Department (HED). Respondent argues that the cost-of-living increases violate article II, section 19 of the New Mexico Constitution, which provides that "no ... law impairing the obligation of contracts shall be enacted by the legislature." The governor vetoed the employee cost-of-living increase, but kept the appropriation. Petitioners argue that the governor seeks to spend the money appropriated by the legislature for the cost-of-living increase for purposes other than those intended by the legislature. The mental health providers whose employees will receive the cost-of-living increase have contracted with HED to provide community based mental health services. Their contracts specifically provide that the contractor is an independent contractor who shall set his own employment policies. The legislature has no authority to alter the terms of existing employment contracts between HED and its providers. N.M. Const. art. II, § 19. Under this section of the Constitution, an existing employment contract cannot be changed by subsequent legislation. It follows that the legislature may not attempt to alter the terms of these contractual relationships through the appropriation process. Such matters are better dealt with in separate legislation where the subject of an act is stated in its title and where the act is open to public debate. *State ex rel. Prater v. State Bd. of Fin.*, 59 N.M. 121, 128, 279 P.2d 1042, 1046 (1955).

The legislature has intruded far too deeply into the executive function in mandating a cost-of-living increase to private sector employees in the General Appropriation Act. Efforts to dictate the specific terms of an existing employment contract between HED and its providers are subject to challenge and veto by the governor. Since the condition itself is improper, we decline to adopt petitioners' argument that the ap-

propriation must also fail. The legislature left the governor little choice but to strike the offensive language and save the HED appropriation. The veto was valid.

■ The next provision we consider is Item K which concerns transfer of funds in the corrections system. The governor vetoed the following language:

The appropriation to the field services division shall not be transferred to any other division or program of the corrections department or to any other department or program.

The appropriations to the Los Lunas correctional center shall not be transferred to any other institution, division or program of the corrections department or to any other department or program.

The appropriations to the Roswell correctional center shall not be transferred to any other institution, division or program of the corrections department or to any other department or program.

The appropriations to Camp Sierra Blanca shall not be transferred to any other institution, division or program of the corrections department or to any other department or program.

The language which the governor vetoed prohibits the intradepartmental transfer of funds within the Corrections Department. This language was vetoed by the governor because it "unnecessarily restricts the management prerogatives of the Corrections Department." The Department of Corrections operates seven adult facilities. Four of these facilities are maximum and medium security facilities which are under federal court supervision by reason of the consent decree entered in *Duran v. Apodaca,* No. 77-721-C (D.N.M. July 14, 1980). *See also Silva v. State,* 106 N.M. 472, 745 P.2d 380 (1987). The Los Lunas, Roswell, and Camp Sierra Blanca facilities dealt with in Item K are minimum security facilities which are not subject to the provision of the Duran decree.

Inmates are frequently moved between the maximum, medium, and minimum security facilities. Under the budget restraints attempted to be imposed by the legislature in the Appropriations Act, each facility is prohibited from transferring funds to another regardless of the demands made upon the Corrections Department by the federal courts under the Duran decree and regardless of the number or location of inmates within the system. The blanket prohibition against *intra*correctional department transfers of funds could paralyze the department and make effective management impossible. Such restraints are an unreasonable intrusion into the executive managerial function.

Petitioners argue that the language vetoed by the governor prohibited the transfer of funds by departments and facilities within Corrections Department to departments or programs outside the Corrections Department. Respondent admits that such a transfer has never occurred, but we decline to reach this issue. The reasons assigned by the governor for his veto of the restrictions contained in Item K of the General Appropriation Act lead us to conclude that he knew that no *inter*department transfers were involved. The veto is valid.

■ Finally, we consider Item L. The governor vetoed the following language that appears as overstricken:

Included in the general fund appropriation to the New Mexico center for women is fifty thousand dollars ($50,000) to be used for providing a training program for female inmates ~~in motel/hotel and restaurant management~~.

The governor's reasoning for the veto was that "[t]he language pertaining to training for female inmates is vetoed to allow their participation in a variety of training programs." The legislature here attempts an improper intrusion into the executive managerial function. The legislature may not restrict the use of funds exclusively for hotel/motel restaurant management training in the General Appropriation Act. It is for the executive to decide which programs are best suited for female inmates. There is no need for an executive function if the legislature is free to define every detail of appropriation use. The legislature is authorized to define the basic purpose for which funds are appropriated, but the se-

lection and identification of specific programs is the responsibility of the executive branch of government. N.M. Const. art II. The veto is valid.

The alternative writ of mandamus is made permanent as to Item B and quashed as to Items A, C, F, G, I, J, K and L.

IT IS SO ORDERED.

SOSA, Senior Justice, dissenting.

Concurring in the per curiam opinion with respect to certain items vetoed by the governor, I must respectfully dissent with respect to Item F. Item F reads as follows:

There is also appropriated the sum of two million seven hundred twenty-two thousand nine hundred ninety-five dollars ($2,722,995) to the administrative services division of the human services department to be matched with three million twenty-eight thousand one hundred five dollars ($3,328,105) in federal funding to be expended only for data processing services [to be purchased from the General Services Department for the ISD 2 system].

State of New Mexico, *Laws 1988, Chapter 13*, at 105 (Vetoed language bracketed).

In my opinion the governor's veto of this item is opposed to our holding in *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 524 P.2d 975 (1974), in the following particulars:

(1) The veto does not eliminate or destroy the whole of the item or part, but instead distorts the legislative intent by creating legislation inconsistent "with that enacted by the Legislature, by the careful striking of words, phrases, clauses or sentences." *Id.* at 365, 524 P.2d at 981.

(2) "Regardless of whether or not the governor's judgment as to this item is better than that of the Legislature, the fact remains it was for the legislature to determine the condition or contingency under which the [General Services Department] could spend this appropriation for contract services." *Id.* at 366, 524 P.2d at 982.

(3) The governor's veto implicitly authorizes funding to agencies not intended by the Legislature, or as the court in *Sego* put it, "the effect of [this veto] was to conditionally appropriate additional funds, or at least authorize their appropriation" to an agency other than the General Services Department. *Id.* at 368, 524 P.2d at 984.

In short, the governor by this veto accomplishes by indirection what he is otherwise prohibited from doing directly by our holding in *Sego*, and I cannot participate in the majority's decision as to item F precisely for this reason.

Further, I disagree with the majority's characterization of the General Services Department as a "contracting party" (*Majority Opinion* at 447, 759 P.2d at 1388) or as "a specific contractor." *Id.* at 446, 759 P.2d at 1387. How is it that the majority can say, "The executive management function has been largely swallowed up by the legislature," *id.*, when it is precisely an organ of the executive branch (the General Services Department) from which the ISD 2 System was to be purchased? I hardly think it overbearing on the part of the legislature to allow the executive branch to "contract" with itself.

It seems to me that, with respect to Item F, the majority opinion is a house divided. It disagrees with the governor's "main objection," *id.* at 446, 759 P.2d at 1387, to Item F (controlling federal funds), as violative of *Sego v. Kirkpatrick*, but then upholds the veto on grounds that the legislature abuses its "oversight function," *id.* at 446, 759 P.2d at 1387. In reality, however, the legislature simply directs, in common-sense fashion, that the General Services Department control the purchase of the ISD 2 System, precisely as the General Services Department controls the everyday purchase of countless other items to be owned by the state.

For the foregoing reasons I dissent as to Item F.